<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED RENTALS (NORTH AMERICA), INC., : : : : Plaintiff, : : v. : : : LIBERTY MUTUAL FIRE INSURANCE : COMPANY, : : Defendant. : | Civil Action No. 19-17169 (SRC) **OPINION** |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before the Court on a motion and a cross-motion for partial summary judgment, pursuant to FED. R. CIV. P. 56: 1) the motion for partial summary judgment by United Rentals (North America) Inc. ("United"); and 2) the cross-motion for partial summary judgment by Defendant Liberty Mutual Fire Insurance Company ("Liberty.") For the reasons set forth below, Plaintiff's motion will be granted and Defendant's motion will be denied.

This case arises out of a dispute between United, a lessor of equipment, and Liberty, an insurer. The basic facts are undisputed. Liberty issued a commercial general liability policy (the "Policy") to non-party Conti Enterprises, Inc. ("Conti"), with coverage for the relevant period. The Policy included an endorsement titled, "ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU" (the "Policy Endorsement.") Conti and United executed a

1

National Account Agreement on August 1, 2009. On August 4, 2009, Conti rented from United a piece of construction equipment, Boom Lift serial number 030011805 (the "Boom Lift"), and signed a form rental agreement issued by United. On the back side of that rental agreement, there is a Section 18, entitled "Customer's Insurance Coverage."

Two employees of Conti, Fritz and O'Keefe, filed individual lawsuits in New York (the "New York Actions"), each alleging injuries from an accident alleged to have occurred while they were at work for Conti using the Boom Lift rented from United. Fritz sued United in 2010; in 2011, O'Keefe sued the Metropolitan Transportation Authority and the Triborough Bridge & Tunnel Authority, and those two defendants filed a third-party complaint against United. United tendered its defense of the New York Actions to Liberty, as an additional insured to Conti's Policy. On September 9, 2014, Liberty issued a disclaimer of coverage letter to United, and Liberty has since continued to assert that United is not entitled to additional insured coverage for these claims.

On August 23, 2019, United filed a Complaint against Liberty in this Court, asserting two claims: 1) breach of contract; and 2) declaratory judgment that, under the Policy, Liberty is obliged to defend and indemnify United in the New York Actions. United now moves for partial summary judgment as to Liberty's duty to defend it, seeking a declaratory judgment that Liberty is obligated to defend United in the New York Actions, as well as reimburse United for costs of defense already incurred. Liberty has cross-moved for partial summary judgment, seeking a declaration that Liberty has no duty to defend United in the New York Actions.

**LEGAL STANDARD**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v.

Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). "In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

### I. The motion and cross-motion for partial summary judgment

Plaintiff moves for partial summary judgment on Liberty's duty to defend it in the New York Actions, seeking a declaration that Liberty is obliged to defend United in the New York Actions, as well as to reimburse United for costs of defense already incurred. Defendant cross-moves for partial summary judgment on the same issue. The parties both argue that the dispute

4

over Liberty's obligation to defend United in the New York Actions turns principally on the question of whether United meets the contractual requirements to be considered an additional insured under the Policy. The parties also do not dispute that this question is governed by the terms of the Policy Endorsement, which states:

> C. **Who Is An Insured** (Section II) is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

In short, United contends that it meets these requirements, and Liberty contends that United does not.

The alleged accident occurred at a construction site in the State of New York. In arguing that Plaintiff is entitled to judgment as a matter of law, United's briefs cite the substantive law of both New York and New Jersey. United does not assert that there is any applicable governing law provision, nor does it make any arguments as to choice of law. In a footnote, United states:

> United Rentals does not waive its rights to argue for the application of New Jersey, or any other state law, on the interpretation of the subject policy. The analysis with respect to both New York and New Jersey law is substantially similar on the duty to defend.

(Pl.'s Br. 16 n.41.) Liberty, in opposition and in support of its cross-motion, does not assert that there is any applicable governing law provision, nor does it make any arguments as to choice of law. Liberty's briefs primarily cite New Jersey law, but also cite some New York cases.

"In exercising diversity jurisdiction, a federal court employs the choice-of-law principles of its forum state to determine which substantive law governs whether a party is entitled to

5

judgment as a matter of law." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022). The New Jersey Supreme Court has established the following principles to determine which state's substantive law governs an issue:

> The first step in a conflicts analysis is to decide whether there is an actual conflict between the laws of the states with interests in the litigation. If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue. A conflict of law requires a "substantive difference" between the laws of the interested states.

Cont'l Ins. Co. v. Honeywell Int'l, Inc., 234 N.J. 23, 46 (2018) (citations omitted). Thus, under New Jersey's choice-of-law principles, this Court first inquires whether there is an actual conflict between the laws of the states with interests in the litigation. Neither party contends that there is a conflict between the laws of New York and New Jersey that is relevant to this case, and this Court concludes that the choice-of-law question is inconsequential. Therefore, under New Jersey law, this Court must apply the law of the forum state, New Jersey.

United argues that it is entitled to judgment as a matter of law because: 1) it has met the requirements for coverage as an additional insured under the Policy Endorsement; and 2) New Jersey law obliges Liberty to defend its insured in the New York Actions. United contends that: 1) Conti leased the Boom Lift from United; 2) Conti and United agreed in writing in a contract that United would be added as an additional insured on Conti's policy; and 3) the New York Actions assert liability for bodily injury; and 4) the bodily injury alleged was caused in part by Conti's operation or use of the Boom Lift. As to the question of whether United is an additional insured, the parties dispute only the second and fourth elements: the agreement in writing and Conti's role in causation are the issues in dispute.

As to the requirement of an agreement in writing, United points to the rental agreement

6

(the "Rental Agreement") for the Boom Lift signed by Conti. Section 18 of the Rental Agreement, entitled "Customer's Insurance Coverage," states in pertinent part:

> Customer agrees to maintain and carry, at its sole cost, adequate liability ... and casualty insurance ... including, but not limited to all risks of loss or damage covered by the standard extended coverage endorsement, to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment during the entire Rental Period. When requested, customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United. The Certificate of Insurance and policy shall provide that United shall receive not less than 30 days' notice prior to any cancellation of the insurance required hereunder.

(Manobianca Cert. Ex. C. at UR-006954.) This demonstrates an agreement in writing in a contract that United be added as an additional insured on Conti's policy.

In opposition, Liberty offers arguments that seek to confuse the issues by introducing uncertainty about what was or was not in the 2009 National Account Agreement between Conti and United. Liberty fails to persuade the Court that the 2009 National Account Agreement is material or relevant to this issue. Liberty's brief does not challenge United's contention, supported by the evidence of record, that a Conti employee, Mr. Painton, signed the Rental Agreement for the lease of the Boom Lift, and that Section 18 of the Rental Agreement requires that United be added as an additional insured on Conti's policy. Liberty has raised no relevant opposition to United's argument that the Policy Endorsement's written agreement requirement was met by the signed Rental Agreement.

Liberty does not argue that the 2009 National Account Agreement that is in the record affects the analysis of this issue. Instead, Liberty offers only speculation that the 2009 National Account Agreement in the record may not be an accurate and complete copy of the real 2009

7

National Account Agreement.   To support this position, Liberty cites only a single sentence from a footnote to United's brief: "Upon information and belief all Schedules included in the August 1, 2017 National Account Agreement were also included in the August 1, 2009 National Account Agreement."   (Def.'s Opp. Br at 12, quoting Pl.'s Br. at 4 n.6.)   Federal Rule of Civil Procedure 56(c)(1) states:

> *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .

Attorney argument in a brief does not constitute any of the materials listed in Rule 56(c)(1)(A). Liberty has cited no evidence to support the inference that the Schedules included in the August 1, 2017 National Account Agreement were also included in the August 1, 2009 National Account Agreement.   Liberty's speculation does not raise any material factual dispute.   Liberty has not even attempted to challenge United's position that the signed Rental Agreement is a valid and binding written agreement which meets the requirement stated in the Policy Endorsement. There is no genuine factual dispute about whether the Policy Endorsement's written agreement requirement was met by the signed Rental Agreement.

As to the other disputed issue, whether the bodily injury alleged was caused in part by Conti's operation or use of the Boom Lift, there is no dispute that the litigants in the New York Actions filed complaints which allege that they were employees of Conti and were injured on the job, while working for Conti and using the Boom Lift that Conti rented from United.   In support, United points to the two complaints filed to initiate the New York Actions.

Plaintiff's Rule 56.1 Statement of Facts quotes the complaints filed in the New York Actions. The Rule 56.1 statement quotes sections of the complaint filed by Fritz which allege that he was an employee of Conti, working at a Conti construction site, that Conti leased the Boom Lift from United, and that Fritz was occupying the Boom Lift when the Boom Lift malfunctioned and injured him; Liberty's responsive Rule 56.1 Statement admits that Plaintiff's Statement quoted the complaint correctly. (Pl.'s 56.1 SOF ¶ 9; Def.'s Resp. 56.1 SOF ¶ 9.) Plaintiff's Rule 56.1 statement also quotes a section of the complaint filed by O'Keefe which alleges that he was an employee of Conti, working at a Conti construction site, and that O'Keefe was occupying the Boom Lift when the Boom Lift malfunctioned and injured him; Liberty's responsive Rule 56.1 Statement admits that Plaintiff's Statement quoted the complaint correctly. (Pl.'s 56.1 SOF ¶ 11; Def.'s Resp. 56.1 SOF ¶ 11.) There is nothing before this Court that indicates any genuine dispute over whether the litigants in the New York Actions have alleged that they were injured while using the Boom Lift in the course of their work for Conti.

Liberty argues that, nonetheless, the meaning of the Policy Endorsement language, "caused, in whole or in part, by your maintenance, operation or use of equipment," is such that the requirement has not been satisfied. The New Jersey Supreme Court has held:

> We briefly detail the rules governing insurance contract interpretation. In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route. If the language is clear, that is the end of the inquiry. Indeed, in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased.

Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (citation omitted); see also Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) ("Contracts should be read as a whole in a fair and common sense manner.") This Court finds that the

9

relevant language of the Policy Endorsement is clear in meaning; Liberty has not pointed to any ambiguity in it.  Pursuant to Chubb, that should be the end of the inquiry.

Although Liberty does not point to any ambiguity in the plain language of the Policy Endorsement, and although Liberty concedes that no New Jersey cases have interpreted the same policy language, Liberty skips over these matters and argues that three unpublished cases should guide this Court's interpretation of the phrase, "caused, in whole or in part, by."  Liberty argues that the three unpublished New Jersey cases are authority for this proposition: "the finding of negligence on the part of the named insured is a prerequisite to coverage for the additional insured."  (Def.'s Opp. Br. at 16.)

Liberty thus argues that the policy term "caused" should be construed to require a finding of negligence against Conti, or at least a claim that Conti was negligent, despite the fact that the plain language of the policy requires only that the injury be caused in part by Conti's operation or use of the Boom Lift.  In none of the cited cases did the policy at issue contain the broad language of the key term in the Policy Endorsement, "operation or use:" Schafer v. Paragano Custom Bldg., Inc., 2010 WL 624108, at *2 (N.J. Super. Ct. App. Div. Feb. 24, 2010); Kostera v. Bacharach Inst. for Rehab., 2015 WL 4643642, at *16 (N.J. Super. Ct. App. Div. Aug. 6, 2015); Port Auth. of New York & New Jersey v. RLI Ins. Co., 2021 WL 3177713, at *3 (N.J. Super. Ct. App. Div. July 28, 2021).[1]  As a result, these cases are distinguishable.  The Court

---

[1] Port Authority does not stand for the proposition that Liberty advances: the Appellate Division decided the case on the basis of the application of a different, separate exclusionary provision to the allegations in the underlying complaint.  2021 WL 3177713 at *8.  The Appellate Division did not review the trial court's interpretation of "caused," and Liberty's statements to the contrary in its brief are not supported by the Appellate Division's written opinion.  (See Def.'s Opp. Br. at 15.)  Rather, the Appellate Division held that, because coverage was excluded by operation of the separate exclusionary provision, the insurer had no duty to reimburse the costs

10

finds no justification to construe "caused" to mean "proximately caused."

Liberty overlooks the significance of the "operation or use" term in the language of the Policy Endorsement. The "operation or use" term gives the coverage described in the phrase at issue a broad scope: the equipment lessor is an insured with respect to liability for any bodily injury caused in part by the lessee's operation or use of the leased equipment. The plain meaning is clear and the language is unambiguous. Liberty's interpretation of the phrase attempts to rewrite it much more narrowly by creating a negligence requirement, or a proximate causation requirement, that does not exist in the Policy Endorsement as it was written. Liberty has shown no valid basis for this interpretation.

Liberty has offered no legal authority in support of its argument that "caused" has a special meaning that requires proximate causation, or at least claims to that effect in the underlying complaints. This Court finds that the plain language of the policy is clear and unambiguous: the Policy Endorsement states that United is an insured with respect to liability for bodily injury caused, in part, by Conti's operation or use of the leased equipment. Although Liberty's brief glosses over its admission that the underlying complaints allege that the accident occurred while Conti workers were working and using the Boom Lift, there is no genuine dispute that the complaints filed in the New York Actions allege facts which, this Court finds, meet the terms of the Policy Endorsement.

This Court has determined that, as United contends, the Policy Endorsement's written agreement requirement was met by the signed Rental Agreement, and the complaints filed in the New York Actions assert claims for liability for bodily injury that was caused, in part, by Conti's

---

of defense. Id.

11

operation or use of the leased equipment.   No genuine disputes over material facts preclude the determination that United has met the requirements of the Policy Endorsement to be an additional insured under the Policy.

Having determined that United qualifies as an additional insured under the Policy, the Court turns to the principal issue of whether Liberty is obligated to defend its insured in the New York Actions.   United contends that New Jersey law obliges an insurer to defend its insured where, as here, a complaint has been filed which states a claim alleging a risk insured against:

> [T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against.   Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit.   If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage.   When multiple alternatives causes of action are stated, the duty to defend will continue until every covered claim is eliminated.

Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173-74 (1992) (citations omitted.)   There is no dispute that the complaints in the New York Actions allege liability for bodily injury, which the Policy Endorsement states falls within the scope of coverage.

Liberty's opposition brief offers many quotes from New Jersey cases but relies on the argument that United does not satisfy the requirements to be an additional insured under the Policy Endorsement.   This Court has just ruled that United *does* satisfy the requirements to be an additional insured under the Policy Endorsement.   This leaves Liberty with no argument in opposition to United's contention that, under New Jersey law, Liberty is obligated to defend United in the New York Actions.

Liberty's opposition tries to demonstrate that New Jersey law allows an insurer to "reserve its rights," refuse to defend its insured, and satisfy its legal obligations by reimbursing

12

the costs of defense of the litigation once it is determined that the claims fall within the scope of coverage. This is problematic on several grounds. First and foremost, Liberty has failed to persuade this Court that there is any genuine dispute about whether the claims against United for bodily injury in the New York Actions fall within the scope of coverage. To the extent that Liberty was uncertain on this point, this Court today resolves the question: United qualifies as an additional insured under the Policy Endorsement and the claims against United for liability for bodily injury in the New York Actions fall within the scope of coverage. As a result of today's decisions, a declaratory judgment will be entered to that effect.

Second, none of the cases which Liberty cites relieve an insurer in Liberty's position of the duty to defend its insured. At most, cases such as Passaic Valley, relying on Burd, allow an insurer asserting a coverage dispute to fulfill its duty by reimbursing the costs of defense if and when the coverage dispute is resolved in favor of the insured:

> Where there is a dispute regarding coverage, the practical effect of *Burd* is that an insured must initially assume the costs of defense subject to reimbursement by the insurer if [the insured] prevails on the coverage question.

Passaic Valley Sewerage Com'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 616 (2011) (citation omitted.) While that position might have been tenable for Liberty yesterday, it is not so today, as this Court now resolves the coverage dispute in favor of the insured. There are no outstanding unresolved coverage disputes that could permit Liberty to continue to take the position that it need not defend its insured, United, until some unknown date. Rather, Liberty now has an obligation to defend United in the New York Actions, as the following discussion will show.

In opposition, Liberty aptly quotes the New Jersey Supreme Court's decision in Hartford:

13

> The Supreme Court has held that "the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured." Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984).

(Def.'s Opp. Br. at 18.)   That citation is correct and relevant, but it supports United's position, not Liberty's.   This Court finds that the complaints in the New York Actions assert claims for liability for bodily injury which Liberty would have a duty to indemnify in the event of judgments adverse to United.   Under New Jersey law, Liberty's duty to defend its insured, United, extends to those claims.

United contends that an insurer's duty to defend is "exceedingly broad," and New Jersey law supports this.   (Pl.'s Br. 16.)   The New Jersey Supreme Court has held:

> An action by an insurer for a declaratory judgment seeking a judicial construction of a liability insurance policy is most often undertaken after a claim thereunder has been made by the insured as the result of a suit against him and the insurer claims it need not defend because the loss is not within the policy coverage. The declaratory judgment suit thus brings into play a comparison of the factual allegations of the damage complaint with the terms of the policy. Generally, where the policy, as here, requires the insurer to defend even if such suit is groundless, false or fraudulent, the damage complaint is laid alongside the policy and the test is whether the allegations of that complaint, upon its face, fall within the risk insured against.

Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 511–12 (1965).   Furthermore:

> In evaluating the complaint for this purpose, doubts are resolved in favor of the insured and, therefore, in favor of reading claims that are ambiguously pleaded, but potentially covered, in a manner that obligates the insurer to provide a defense. Similarly, if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved.

Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010) (citation omitted.)[2]

---

[2] This quote from Flomerfelt makes clear that, under these facts, Liberty is obligated to provide a defense to United: the claims must be read in a manner that obligates the insurer to provide a

14

As already noted, Liberty points out that <u>Burd</u> and its progeny provide an exception to these general rules:

> [I]f a factual dispute central to deciding whether a policy provides coverage cannot be decided absent a trial, an insured must initially assume the costs of defense ... subject to reimbursement by the insurer if [the insured] prevails on the coverage question.

<u>Id.</u> at 446. Liberty has not demonstrated, however, that the <u>Burd</u> exception applies here: Liberty has not even argued that there is a factual dispute central to deciding whether the Policy provides coverage to United. Furthermore, even if Liberty had pointed to such a factual dispute, Conti is not a party to either of the New York Actions and those cases will not determine Conti's role in the alleged bodily injury. If Liberty wanted to raise such a dispute and have it adjudicated, the present case has been its opportunity to do so. As the New Jersey Supreme Court explained:

> In short, in circumstances in which the underlying coverage question cannot be decided from the face of the complaint, the insurer is obligated to provide a defense until all potentially covered claims are resolved, but the resolution may be through adjudication of the complaint or in a separate proceeding between insured and insurer either before or after that decision is reached.

<u>Id.</u> at 447. While this Court does not agree with Liberty that the underlying coverage question cannot be decided from the face of the complaints in the New York Action, even if it did agree, as explained in <u>Flomerfelt</u>, New Jersey law recognizes only two avenues for resolution of the question. The first, adjudication of the complaints, is inapplicable in this case because it is undisputed that the New York Actions will not determine Conti's role in the alleged injuries. It is only the second option, a separate proceeding, that is available to resolve the coverage dispute, and that separate proceeding is this case, here and now. Liberty has been given the opportunity

---

defense, and thus must be read to allege that the injuries to Fritz and O'Keefe were caused in part by Conti's operation or use of the Boom Lift.

15

to litigate the coverage question, and has done so.  United has moved for partial summary judgment on Liberty's duty to defend it in the New York Actions, and Liberty has failed to defeat United's motion.  With today's decision, the dispute over the duty to defend is resolved in the separate proceeding envisioned by the New Jersey Supreme Court in Flomerfelt.

In conclusion, United has shown that it is entitled to judgment as a matter of law, and its motion for partial summary judgment will be granted.  Judgment will be entered in Plaintiff's favor on the issue of the duty to defend, and this Court will issue a declaratory judgment that United qualifies as an additional insured under the Policy, that Liberty is obliged to defend United in the New York Actions, and that Liberty must reimburse United for all costs of defense in the New York Actions.  Liberty's cross-motion for partial summary judgment will be denied.

                                                          s/ Stanley R. Chesler
                                       STANLEY R. CHESLER, U.S.D.J.

Dated:  April 28, 2022