NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED RENTALS (NORTH AMERICA) INC., | : : : : |
| Plaintiff, | : : |
| v. | : : : |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | : : : : |
| Defendant. | : |

**Civil Action No. 19-17169 (SRC)**

**OPINION**

**CHESLER**, District Judge

This matter comes before the Court on a motion for attorney's fees filed by Plaintiff United Rentals (North America) Inc. ("United" or "Plaintiff"). Defendant Liberty Mutual Fire Insurance Company ("Liberty" or "Defendant") opposes the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Plaintiff's motion in part.

**I.    Background**

This case is an insurance dispute between United and Liberty. The basic facts are not disputed. United entered into a contract to rent a boom lift to non-party Conti Enterprises, Inc ("Conti"). As part of that contract, Conti allegedly "agreed to secure liability insurance providing additional insured coverage to United" for incidents arising from the use of the boom lift. (Amended Complaint ¶ 8). Liberty issued a general commercial liability policy (the "Policy") to

Conti which included an additional insured endorsement.

Two employees of Conti filed lawsuits in New York ("New York Actions") alleging injuries sustained while using the boom lift, and United ultimately became a party in both suits. United tendered its defense of these lawsuits to Liberty, but Liberty returned a disclaimer of coverage letter to United asserting United is not covered under the additional insured endorsement. United filed this action alleging they are covered under the additional insured endorsement. (Amended Complaint ¶ 10-11). Their lawsuit makes three claims: breach of contract, declaratory judgment of Liberty's duty to defend and indemnify, and bad faith.

Both parties moved for partial summary judgment on the issue of the duty to defend.[1] On April 28, 2022, the Court issued an order granting summary judgment in favor of United. Liberty has appealed this order. Following the order, United filed a motion for attorney's fees expended in this action thus far, claiming $351,041.65. Liberty first argues that the Court should delay its disposition of the attorney's fee motion until the resolution of its appeal. Second, it argues the Court should not grant attorney's fees to United. Third, if the Court grants attorney's fees, Liberty makes specific objections to United's attorney's fee calculation.

**II.     Discussion**

    a. <u>Timing of the Motion</u>

Preliminarily, Liberty asserts United's motion for attorney fees is premature. Liberty is currently appealing this Court's order granting partial summary judgment. It argues that this Court

---

[1] During discovery, the Court granted a motion to compel two depositions and various document in favor of United after Liberty failed to meaningfully engage with United on these issues. In addition to granting the motion, the Court awarded attorney's fees associated with the motion to United. (ECF No. 44). The parties settled this award for $15,000. (ECF No. 136-1 ¶ 8).

should postpone ruling on attorney's fees because those fees depend on United's status as a "successful claimant," which would be negated if Liberty is successful on appeal.

The Court will resolve the attorney's fee motion despite the pendency of Liberty's appeal. First, this Court continues to have jurisdiction over the issue of attorney fees while the partial summary judgment order is reviewed by the Court of Appeals. See West v. Keve, 721 F.2d 91, 95 n.5 (3d Cir. 1983) ("Should the district court prefer to consider a fee application during a pending appeal on the predicate case, the district court is not divested of jurisdiction to determine the application."). Second, District Courts have significant discretion to manage their dockets, including scheduling the disposition of attorney's fee motions. See Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("We will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" (quoting Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1105 (5th Cir. 1972))). This does not change when a party files a notice of appeal. "A District Court, at its discretion, may consider an application for attorneys' fees during the pendency of an appeal."[2] Duman Bd. of Educ. v. J.T. o/b/o I.T., No. 09-5048, 2010 WL 11566519 (D.N.J. July 15, 2010).

---

[2] The Court understands the power to decides this motion now rests in its inherent powers of case management, and accordingly, the Court is not bound to consider this issue through the lens of the stay factors. See Hilton v. Baunskill, 481 U.S. 770, 776 (1987) (listing the stay factors as "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies"). However, even if the Court were required to apply the stay factors, the analysis would remain the same. The jurisdictional issues cast significant doubt on Liberty's ability to succeed on the merits. Liberty will suffer harm if it prevails on appeal after fees are awarded to United, but it may be corrected through

3

Resolving the attorney's fee motion now will vindicate the policies underlying New Jersey Court Rule 4:42-9 and conserve judicial resources. New Jersey Court Rule 4:42-9 allows for fee shifting in order to "discourage[] insurance companies from attempting to avoid their contractual obligations and force their insureds to expend counsel fees to establish the coverage for which they have already contracted." Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 450 (2015). In short, the Rule is designed to minimize litigation cost and risk for prevailing insureds. This policy is best vindicated if fee determinations can be made quickly after resolving insurance issues, thus mitigating uncertainty and associated costs to a prevailing insured. This motion has been pending since May, so immediate resolution will advance New Jersey's policy.

Immediate resolution is also likely to conserve judicial resources. The issues are briefed and have been presented before the Court. Any further delay would tax the resources of the Court. Liberty raises the issue of its pending appeal. However, United points to serious concerns over the jurisdiction of Liberty's appeal. Specifically, there may not be appellate jurisdiction because the order granting partial summary judgment was not a final order disposing of the action, nor did this Court certify the issue pursuant to Federal Rule of Civil Procedure 54(b). See 28 U.S.C. § 1291; Fed. R. Civ. P. 54(b). The Court of Appeals noted this concern and issued an order directing the parties to address the issue of appellate jurisdiction. United Rentals N. Am. Inc. v. Liberty Mut. Fire Ins. Co., No. 22-2297 (3d Cir. 2022) ECF. No. 3. While it is not for this Court to evaluate the appeal's jurisdictional issues, it may consider a party's likelihood of success on appeal for case

---

vacatur. United Rental is harmed to some extent by unnecessary delays in deciding their motion. The public interest weighs heavily in favor of immediate resolution as it vindicates the policies underlying New Jersey Court Rule 4:42-9 and prevents unnecessary waste of judicial resources. Ultimately, the likelihood of success and public interest factors outweigh the potential harm to Liberty, and therefore the Court should not delay or stay its resolution of this motion.

4

management purposes. See Guarnieri v. Borough, No. 5-cv-1422, 2010 WL 3447752, at *2 (M.D. Pa. Aug 30, 2010) (considering likelihood of success among the other stay factors in similar circumstances). Considering the totality of the circumstances, the Court believes there is a greater risk of expending unnecessary resources by delaying the resolution of this motion instead of deciding it now.

Accordingly, the Court will decide the attorney's fee motion without delay. If Liberty is successful on appeal, it may seek to vacate this order. See Turner v. McMahon, 830 F.2d 1003, 1009 (9th Cir. 1987).

### b. Granting Attorney's Fees

United moves for an award of attorney's fees. Because this is an action based in diversity, state law governs the availability of attorney's fees. McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 n.47 (3d Cir. 1990). New Jersey does not allow fee shifting outside of a limited set of circumstances. Occhifinto, 221 N.J. at 449. New Jersey Court Rule 4:42-9(1)(6) provides that attorney fees may be available "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." N.J. Ct. R. 4:42-9(1)(6). New Jersey defines "successful claimant" broadly, as "a party that succeeds on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." Occhifinto, 221 N.J. at 450 (internal quotations and alterations omitted). This includes an insured that obtains a declaratory judgment confirming an insurer's duty to defend without any further relieve. Id. at 451-52 (citing Schmidt v. Smith, 294 N.J. Super. 569, 591 (App. Div. 1996)). Claimants also may include third-party beneficiaries to insurance contracts. Id. at 451.

5

United is a claimant: each of its claims arise out of the Policy issued by Liberty. This Court granted partial summary judgment to United that Liberty was obliged to defend it in the New York Actions. United clearly qualifies as a successful claimant under Rule 4:42-9(1)(6).

Liberty does not contest the applicability of Rule 4:42-9(1)(6). Rather, it asks that the Court exercise its discretion to not award fees because it asserts its defense was reasonable and in good faith. New Jersey law grants the Court significant discretion when awarding attorney fees. "[T]he trial judge has broad discretion as to when, where, and under what circumstances counsel fees may be proper and the amount to be awarded." Passaic Valley Seweage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 619 (2011) (quoting Iafelice ex rel. Wright v. Arpino, 319 N.J. Super. 581, 590 (App. Div. 1999)). A decision regarding attorney fees is governed by equitable principles and considers the totality of the circumstances. Iafelice, 319 N.J. Super. at 591 (citing Enright v. Lubow, 215 N.J. Super. 306, 313 (App. Div. 1987)).

Here, the Court is persuaded by United's rationale for granting fees. Rule 4:42-9(1)(6) exists for cases like these, minimizing the cost for insureds to hold insurers to their contractual obligations. See Occhifinto, 221 N.J. at 450. The motion for partial summary judgment was resolved as a matter of contract interpretation. While Liberty defends the reasonableness of its interpretation based on a lack of New Jersey case law interpreting its policy language, (Def. Br. in Opposition at 5), summary judgment was granted on the basis of a plain language interpretation of the Policy. (ECF No. 111 at 9-10). United should not bear the cost of enforcing its rights under the Policy when at least some of those rights were apparent on the face of the Policy. Furthermore, the Court agrees with United that Liberty is responsible for some unnecessary delay in this matter. Most notably, the Court granted a motion to compel filed by United after Liberty did not produce

6

two witnesses and relevant documents.[3] (ECF No. 44). The Court will therefore grant reasonable attorney fees.

        c. <u>Calculating Attorney's Fees</u>

The Court agrees with United that the lodestar method is the appropriate measure of attorney's fees in this matter, especially where the requested relief includes a declaratory judgment. Liberty does not specifically object to the use of the lodestar method.

The lodestar method determines a fee based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). The burden to establish a reasonable number of hours worked and a reasonable rate lies with the moving party: "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." <u>Id.</u>

The attorneys for United recorded a total of 1,239.2 hours of work on this matter. They charged an hourly rate of $450 for partners, $325 for associates and other attorneys, and $170 for law clerks and paralegals. They claim a total attorney's fee of $346,068.50. They also claim costs of $4,973.15, bringing the total to $351,041.65. In support of these claimed costs and fees they submit various affidavits, an invoice for all hours worked, and citations to various sources evidencing reasonable attorney fees in the District of New Jersey.

---

[3] While the Court has already awarded attorney's fees for work associated with the motion to compel, the Court considers the totality of each party's conduct in deciding whether to award fees under Rule 4:42-9(1)(6). <u>Iafelice</u>, 319 N.J. Super. at 591.

Liberty does not contest any of the claimed hourly rates of United's attorneys. The Court has reviewed United's evidence of reasonable rates for attorneys in the District of New Jersey and finds this evidence persuasive of the reasonableness of the claimed rates.

However, Liberty does challenge the reasonableness of paralegal Sally Richmond's $170 hourly rate. Specifically, Liberty argues United provided insufficient evidence of the reasonableness of her hourly rate, and thus the award cannot compensate her work.

Preliminarily, the work of paralegals is compensable in a similar manner to the work of attorneys. See Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("We thus take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys."); DePalma v. Building Inspection Underwriters, 350 N.J. Super. 195, 218 (App. Div. 2002) (affirming an attorney fee award which included paralegal time pursuant to N.J. Ct. Rule 4:42-9(a)(8)). A paralegal's hourly rate must be reasonable in the market for professional services of someone with similar experience, subject-matter expertise, and geographic location. The moving party bears the burden of proving the reasonableness of the hourly rate. Hensley, 461 U.S. at 433.

Initially, the only evidence of the reasonableness of Ms. Richmond's rate was a citation to Ill. Nat'l Ins. Co. v. Wyndham Worldwide Ops. Inc., No. 09-1724, 2011 WL 2293334 (D.N.J. June 7, 2011), which supports the reasonableness of an hourly rate for "paralegal and litigation support staff ranging from $135-$162." (Pl. Br. in Support at 12). However, United later supplemented its motion with an affidavit stating Ms. Richmond's credentials and providing further evidence of normal billing rates for paralegals. The Court accepts this supplemental information. Ms. Richmond has over forty years of paralegal experience, with particular

8

experience in commercial litigation. In light of this evidence, the Court is convinced that a $170 hourly rate is a reasonable rate for Ms. Richmond's services.

Liberty's remaining arguments challenge United's ability to collect certain categories of fees, either because these categories are not recoverable, not reasonable, or not adequately documented. Some of Liberty's arguments are meritorious, and United's total hours will be reduced accordingly. Otherwise, United spent a reasonable number of hours on this matter. Therefore, after all deductions are made, United will be awarded $299,587.80 for 1,119.6 hours of work, in addition to costs of $4,973.15, for a total award of $304,560.95.[4]

### i. Redacted Invoice Records

United relies upon invoice records to support the reasonableness of the number of hours it worked on this matter. Liberty argues that many of the invoice entries are rendered vague by redaction. This is the second set of invoices submitted by Liberty. Initially, United submitted invoices that redacted all descriptions of the work performed. (ECF No. 117-9). The Court ordered United to re-submit its invoices with redactions that allow Liberty and the Court to evaluate the reasonableness of United's claimed fees. (ECF No. 126). Liberty argues this second set of invoices still provides insufficient information to resolve the reasonableness of United's claimed hours. In support of its contention, it identifies ninety-three entries that it claims are too vague to evaluate whether they are reasonable uses of attorney time. It asserts the Court must either compel United to release completely unredacted invoice records or alternatively reduce the award by the amount reflected in vague invoice entries. United argues that the redactions were

---

[4] United claims a fee of $346,068.50 for 1,239.2 hours works. As explained below, the Court will apply a deduction of $46,480.70 accounting for 119.6 hours. The leads to a total fee of $299,587.80 for 1,119.6 hours of work. Liberty does not challenge the United's claimed costs of $4,973.15, and the Court finds these costs reasonable. Therefore, the total award will be $304,560.95.

necessary to protect attorney-client privilege and that if they Court wishes to review the unredacted invoices, it may do so in camera.

In a recent case, the Third Circuit provided a succinct explanation of the standard of specificity needed from the records of a party moving for attorney's fees:

> Our case law requires that any hours to be used in calculating attorneys' fees be detailed with sufficient specificity. In other words, the fee application must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed. The petition should therefore include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. It is not necessary, however, to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.

Gelis v. BMW of N. Am., LLC, --- F.4th ---, 2022 WL 4113673, at *4 (3d Cir. 2022) (internal punction and citations omitted) (citing Keenan v. City of Phila., 983 F.2d 459, 472-73 (3d Cir. 1992); Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990)).

While a moving party does not need to provide detailed information about how they spent every minute working on a matter, several of United's entries leave the Court unable to discern anything about the nature of their work on this case. For example, many entries simply say "Strategize [REDACTED]," "Review [REDACTED]," or "Analyze [REDACTED]." (ECF No. 136-6). This provides no information about what work United's lawyers performed in this case. Many other entries discuss legal research but provide no information except for perhaps a jurisdiction. (ECF No. 136-6). While a moving party does not need to provide exceedingly detailed information, the Court is not able to evaluate the reasonableness of the time spent on research without some inkling of the underlying substance. Gelis, 2022 WL 4113673, at *4. This

10

information could be presented in a manner that does not infringe on attorney-client privilege or the attorney work product doctrine. Cf. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996) (discussing how a significant amount of substantive information must be revealed to a court in the course of maintaining a privilege log, including the subject of communications). The Court has reviewed the entries and finds the majority of those identified as vague by Liberty are indeed insufficiently specific to enable a reasonableness analysis. Of the ninety-three entries identified by Liberty, the Court finds United failed to meet its burden of specificity for ninety of them, accounting for 111.4 hours and $28,815.70.[5] The remaining three entries do provide the Court

---

[5] The Court finds United failed to meet its burden with respect to the following entries:

| DATE | ATTY | DESCRIPTION OF SERVICE | HOURS | AMOUNT |
|---|---|---|---|---|
| 8.16.19 | KAB | Review/analyze [REDACTED] | 0.6 | $195.00 |
| 8.19.19 | AGH | Review/analyze re [REDACTED] | 1.6 | $272.00 |
| 8.19.19 | AGH | Review and analyze case law in [REDACTED] | 2.8 | $476.00 |
| 8.22.19 | KAB | Review/analyze [REDACTED]. | 2.5 | $812.50 |
| 9.19.19 | KAB | Review/analyze [REDACTED]; call with opposing counsel; discuss strategy [REDACTED]; call with P. Perez; correspondence to group summarizing same. | 2.6 | $845.00 |
| 9.20.19 | AGH | Review [REDACTED] | 1.1 | $187.00 |
| 1.7.20 | AGH | Strategize re [REDACTED] | 0.9 | $292.50 |
| 1.7.20 | AGH | Review and analyze case law and memo [REDACTED] | 0.6 | $195.00 |
| 1.7.20 | AGH | Review and analyze [REDACTED] | 0.7 | $227.50 |
| 1.7.20 | AGH | Review and analyze [REDACTED] | 0.6 | $195.00 |
| 1.7.20 | SMM | Review strategy re: [REDACTED] | 0.9 | $292.50 |
| 1.8.20 | AGH | Review and analyze [REDACTED]; strategize re [REDACTED] | 0.7 | $227.50 |
| 1.17.20 | AGH | Review and analyze [REDACTED] | 0.7 | $227.50 |
| 1.17.20 | AGH | Review and analyze [REDACTED] | 0.3 | $97.50 |
| 2.11.20 | ACH | Review and analyze [REDACTED]; review and analyze NJ law to [REDACTED] | 1.1 | $357.50 |
| 2.12.20 | SMM | Strategize re: [REDACTED]; Correspondence with client re: [REDACTED] | 2.3 | $747.50 |
| 3.3.20 | SMM | Review status and strategy re: [REDACTED] | 0.7 | $227.50 |
| 3.4.22 | AGH | Review and analyze [REDACTED] | 0.8 | $260.00 |
| 3.5.20 | AGH | Strategize re [REDACTED] | 0.2 | $65.00 |

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 3.5.20 | SMM | Review strategy re: [REDACTED] | 1.1 | $357.20 |
| 3.13.20 | AGH | Strategize re [REDACTED] | 0.5 | $162.50 |
| 3.13.20 | SMM | Strategize re [REDACTED] | 0.5 | $162.50 |
| 3.24.20 | AGH | Review and analyze New Jersey case law [REDACTED]. | 0.5 | $162.50 |
| 3.25.20 | AGH | Review and analyze New Jersey case law [REDACTED]. | 1.3 | $422.50 |
| 3.25.20 | AGH | Review and analyze New Jersey case law [REDACTED]. | 0.7 | $227.50 |
| 3.26.20 | AGH | Review and analyze New Jersey case law regarding [REDACTED]. | 2.1 | $682.50 |
| 3.27.20 | AGH | Strategize re. [REDACTED]. | 0.7 | $227.50 |
| 3.30.20 | GDP | Review/analyze/refine strategy re. [REDACTED]. | 0.8 | $360.00 |
| 4.7.20 | AGH | Draft chart [REDACTED]. | 2.9 | $942.50 |
| 5.28.20 | AGH | Strategize re [REDACTED]. | 0.8 | $260.00 |
| 7.15.20 | GGK | Conducted case analysis of [REDACTED]. | 3.3 | $561.00 |
| 7.16.20 | GGK | Conducted case analysis re: [REDACTED]. | 2.2 | $374.00 |
| 7.16.20 | GGK | Began drafting internal memo re. [REDACTED]. | 1.1 | $187.00 |
| 7.17.20 | GGK | Continued drafting internal memo re: [REDACTED]. | 1 | $170.00 |
| 7.20.20 | GGK | Completed full draft of internal memo re. [REDACTED]. | 5.2 | $884.00 |
| 7.30.20 | AGH | Review and analyze strategy [REDACTED]. | 0.4 | $130.00 |
| 9.10.20 | AGH | Strategize re: [REDACTED]; review and analysis [REDACTED]. | 0.9 | $292.50 |
| 9.16.20 | RGN | Review and analyze [REDACTED]. | 1.1 | $357.50 |
| 9.16.20 | RGN | Draft memo re. [REDACTED]. | 2.3 | $747.50 |
| 9.16.20 | RGN | Review and analyze authority re. [REDACTED]. | 2.4 | $780.00 |
| 9.17.20 | SMM | Review strategy re: [REDACTED] and [REDACTED]. | 0.8 | $260.00 |
| 9.17.20 | RGN | Draft memo re. [REDACTED]. | 2.1 | $682.50 |
| 11.2.20 | MHL | Continue review and analysis [REDACTED]. | 1.6 | $272.00 |
| 12.3.20 | SMM | Review strategy re: [REDACTED]. | 1.1 | $357.50 |
| 12.8.20 | AMF | Researched cases where [REDACTED]. | 5.5 | $935.00 |
| 1.14.21 | AGH | Strategize re: [REDACTED]. | 0.6 | $195.00 |
| 1.14.21 | SMM | Strategize re: [REDACTED]. | 0.8 | $260.00 |
| 1.27.21 | AGH | Strategize re: [REDACTED]. | 0.2 | $65.00 |
| 2.11.21 | GDP | Analyze [REDACTED]. | 0.6 | $270.00 |
| 2.11.21 | AGH | Strategize re [REDACTED]. | 0.6 | $195.00 |
| 2.11.21 | AGH | Strategize re [REDACTED]. | 0.5 | $162.50 |
| 2.25.21 | AGH | Strategize re [REDACTED]. | 0.4 | $130.00 |
| 3.6.21 | AGH | Strategize re [REDACTED]. | 0.3 | $97.50 |
| 3.6.21 | SMM | Strategize re [REDACTED]. | 0.5 | $162.50 |
| 4.8.21 | AGH | Strategize re [REDACTED]. | 0.3 | $97.50 |
| 4.29.21 | AGH | Strategize re [REDACTED]. | 0.4 | $130.00 |
| 4.29.21 | SMM | Strategize re [REDACTED]. | 0.5 | $162.50 |

| | | | | |
|---|---|---|---|---|
| 5.25.1 | SMM | Strategize re: [REDACTED]. | 0.4 | $130.00 |
| 5.26.21 | AGH | Strategize re [REDACTED]. | 0.9 | $292.50 |
| 5.28.21 | MAA | Ongoing research of whether [REDACTED]. | 2 | $340.00 |
| 5.31.21 | MAA | Ongoing research of whether [REDACTED]. | 1.9 | $323.00 |
| 5.31.21 | MAA | Ongoing research of whether [REDACTED]. | 0.4 | $68.00 |
| 5.31.21 | MAA | Ongoing research of whether [REDACTED]. | 0.4 | $68.00 |
| 6.1.21 | SMM | Strategize re: [REDACTED], research [REDACTED]. | 2.1 | $682.50 |
| 6.1.21 | MAA | Ongoing research of whether [REDACTED]. | 0.4 | $68.00 |
| 6.1.21 | MAA | Research and writing of a memo answering the question of [REDACTED]. | 5.1 | $867.00 |
| 6.2.21 | AGH | Review and analysis of case law regarding [REDACTED]. | 0.6 | $195.00 |
| 6.14.21 | AGH | Review and analysis of caselaw regarding [REDACTED]. | 1.1 | $357.50 |
| 6.14.21 | AGH | Strategize re [REDACTED]. | 0.6 | $195.00 |
| 6.14.21 | SMM | Strategize re [REDACTED]. | 1.1 | $357.50 |
| 6.15.21 | SMM | Strategize re [REDACTED]. | 1.1 | $357.50 |
| 6.23.21 | SMM | Emails with J. Sparling re: [REDACTED]. | 0.3 | $97.50 |
| 6.28.21 | SMM | Strategize re: [REDACTED] Revise [REDACTED], E-mails with P. Perez re: [REDACTED]. | 1.4 | $455.00 |
| 7.2.21 | SMM | E-mails with J. Sparling re: [REDACTED]. | 0.2 | $65.00 |
| 8.11.21 | MDA | Review of NY law re [REDACTED]. | 0.5 | $162.50 |
| 8.11.21 | MDA | Review of [REDACTED]. | 0.3 | $97.50 |
| 8.11.21 | MDA | Prepare correspondence to Attorney Manobianca regarding [REDACTED]. | 0.3 | $97.50 |
| 10.20.21 | SMM | Communications with client re: [REDACTED]; Strategize re: [REDACTED] | 1.6 | $520.00 |
| 11.11.21 | KR | Strategized [REDACTED]; analyzed and drafted findings on whether, [REDACTED]. | 2.7 | $459.00 |
| 12.22.21 | SMM | Strategize re: [REDACTED]. | 0.6 | $195.00 |
| 12.22.21 | MDA | Strategize regarding [REDACTED]. | 0.7 | $227.50 |
| 1.11.22 | JWV | Reviewing caselaw and drafting memo [REDACTED]. | 5.2 | $884.00 |
| 1.11.22 | MDA | Strategize regarding [REDACTED]. | 0.5 | $162.50 |
| 1.12.22 | SMM | Revise and refine [REDACTED]. | 3.1 | $1,007.50 |
| 2.17.22 | JWV | [REDACTED]. | 1 | $170.00 |
| 2.17.22 | JVW | Strategizing [REDACTED]. | 0.5 | $85.00 |
| 5.4.22 | BAS | Review [REDACTED] for drafting motion for fees. | 0.3 | $97.50 |
| 5.26.22 | APM | Strategized [REDACTED]. | 2.5 | $425.00 |
| 5.26.22 | APM | Strategized [REDACTED]. | 0.8 | $136.00 |
| 5.26.22 | APM | Strategized [REDACTED]. | 0.5 | $85.00 |
| TOTAL | | | 111.4 | $28,815.70 |

with enough information to understand the nature of the work performed, and the Court finds these time expenditures reasonable.[6]

Liberty argues the Court should either order the production of unredacted invoices or reduce the attorney fee award by the amount reflected in vague entries. United argues that if the invoices are found to be vague, the Court should review them in camera. First, the Court will not order United to produce unredacted invoices. The attorney-client privilege and attorney work product doctrine likely protect at least some of the redacted information. The Court will not order United to reveal that information. Second, the Court will not order production of the invoices in camera. Liberty must be given a reasonable opportunity to review the invoices and object to any entries it contends are vague or unreasonable. See Route1 Inc. v. AirWatch LLC, No. 17-cv-331, 2020 WL 1955436, at *3 (D. Del. Apr. 23, 2020) (denying in camera review of redacted invoices). Such a process is at best unfair, and at worst, runs afoul of due process principles. The Court will not deny Liberty the opportunity to thoroughly review and object to information contain within the invoices.

Rather, the Court will proceed by deducting fees associated with the vague entries from the total award. The burden to present evidence of reasonableness of a fee award rests with the moving party. Hensley, 461 U.S. at 433. The Court has already ordered United to provide

---

[6] These entries are:

| DATE | ATTY | DESCRIPTION OF SERVICE | HOURS | AMOUNT |
|---|---|---|---|---|
| 8.14.19 | KAB | Review/analyze [REDACTED]; review/analyze [REDACTED]; finish drafting DJ complaint against LM. | 1.8 | $585.00 |
| 2.12.20 | AGH | Review and analyze [REDACTED]; review and analyze [REDACTED]; draft bad faith count into complaint | 1.1 | $357.50 |
| 10.29.21 | JWV | Reviewing and analyzing [REDACTED] in order to draft motion for summary judgment. | 1.6 | $272.00 |

14

sufficient information for it to evaluate the reasonableness of their requested fee. (ECF No. 126). They are not entitled to a third opportunity to explain the reasonableness of the hours spent on this matter. Because United has not met its burden to show documentation of some of its work with adequate specificity for the Court to evaluate its reasonableness, the Court will reduce the total requested award by $28,815.70. See Hensley, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); Americans for Prosperity v. Grewal, No. 19-cv-14228, 2021 WL 1153194, at *4 (D.N.J. Mar. 26, 2021) (excluding fees attributed to redacted invoice entries because the moving party "fail[ed] to meet its burden to prove the reasonableness of the attorney's fees as to the redacted entries").

    ii. Block Billing

Liberty asserts United's invoice entries that contain more than one activity, commonly known as block billing, cannot be counted toward the total award because these entries obscure the amount of time spent on each activity. United disagrees and argues block billing is permissible.

These entries are governed by the same standard described above. That is, a "fee application must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed," but "[i]t is not necessary . . . to know the exact number of minutes spent nor the precise activity to which each hour was devoted." Gelis, 2022 WL 4113673, at *4 (internal punctuation omitted) (citing Rode, 892 F.2d at 1190). There is no independent authority prohibiting block billing. Rather, block billing is permissible as long as it does not render an entry confusing in a way that interferes with the Court's review of the record. In support of its position, Liberty cites United States v. NCH Corp., Nos. 98-5268, 05-881, 2010 WL 3703756 (D.N.J. Sept. 10, 2010). But NCH Corp. supports the precise standard set out above,

15

that what matters is whether "there is confusion due to block billing," which "thwarts the Court in the performance of its review obligations." Id. at *5.

Turning to United's billing records, very few entries employ block billing in a way that interferes with the Court's review. The Court does not need precise allocations of how United's lawyers spent every six-minute interval. Rode, 892 F.2d at 1190. Rather, most entries provide the Court with enough information to determine whether they reflect a reasonable use of time. Most entries identified by Liberty as block billing have a common theme or objective, and almost any allocation of time between various listed activities would still be reasonable. Liberty objects, for instance, to a pair of entries from February 2020 that devote a total of six hours to revising interrogatory responses, emailing the client, and emailing counsel about interrogatories and document production. Liberty is concerned that the Court cannot allocate time between these three activities. But the Third Circuit's standard does not require such a precise allocation. It appears from the entries that six hours were devoted to discovery related activities, and that almost any allocation of the six hours among those three activities would be reasonable. Most other block billing entries, whether or not identified by Liberty, provide the Court with sufficient information to determine they were a reasonable use of attorneys' time.

The only confusing block billing entries are those that contain several redactions. For these entries, it is difficult to identify an underlying theme to the entry and whether most allocations of time between the activities would be reasonable. The Court found three entries, beyond those already excluded for vagueness, which are confusing due to a combination of redactions and block billing.[7] For example, one entry, dated February 10, 2020, states "Correspondence with client re:

---

[7] These entries are:

16

[REDACTED]; Strategize re: [REDACTED]; Conference call with client re: [REDACTED]; Conference call with client re: [REDACTED]; E-mails with plaintiff's counsel re: privilege log." This entry combines several activities but provides almost no information about those activities except the last one. The Court cannot determine whether this was a reasonable use of attorney time. The other two entries are similar. Accordingly, the Court will deduct this time from the fee award, deducting 7 hours valued at $2,275.

      iii. Non-Admitted Lawyers

Liberty argues that United cannot recover for the work of lawyers not admitted to the practice of law in New Jersey. It cites various cases in support of its proposition. See, e.g., Bilazzo v. Portfolio Recovery Assoc., LLC, 876 F. Supp. 2d 452, 461-69 (D.N.J. 2012); Gsell v. Rubin & Yates, LLC, 41 F. Supp. 3d 443 (E.D. Pa. 2014); Caplan v. Premium Receivables LLC, No. 15-cv-474, 2015 WL 4566982 (W.D. Pa. July 29, 2015).[8] These cases are distinguishable because they are egregious instances of unauthorized practice of law, where courts sanction that behavior

| DATE | ATTY | DESCRIPTION OF SERVICE | HOURS | AMOUNT |
|---|---|---|---|---|
| 8.23.19 | KAB | Finish review/analysis of REDACTED; draft writeup to client REDACTED; review/revise complaint to comply with local D. NJ rules; review civil docket sheet and summons before filing; REDACTED with client re: REDACTED; coordinate filing of complaint. | 2.2 | $715.00 |
| 2.10.20 | SMM | Correspondence with client re: REDACTED; Strategize re: REDACTED; Conference call with client re: REDACTED; Conference call with client re: REDACTED; E-mails with plaintiff's counsel re: privilege log; | 2.9 | $942.50 |
| 2.18.20 | SMM | Review relevant documents produced by Liberty Mutual; E-mails with P. Perez re: REDACTED; Phone calls with client re: REDACTED, E-mails with client re: REDACTED; Phone call to J. Regan re: REDACTED | 1.9 | $617.50 |
| TOTAL | | | 7 | $2,275.00 |

[8] The Pennsylvania cases are inapposite here because New Jersey law determines the availability of attorneys' fees. McAdam, 896 F.2d at 775 n.47.

by denying attorney fees.  For example, in Bilazzo, the attorney of record was admitted to practice in New Jersey, but the majority of the work, including significant filings, were performed by non-admitted attorneys from another firm without pro hac vice admission.  Bilazzo, 876 F. Supp. 2d at 465.  Here, United is seeking attorney fees for attorneys who all work for the same law firm.  These lawyers had differing bar admissions, but New Jersey lawyers performed most of the work and they signed all the filings with the Court.  Other attorneys in the firm who assisted in this matter, including partners, were not required to seek pro hac vice admission because only lawyers admitted to practice in New Jersey appeared in this case, and they were primarily responsible for it.  See L. Civ. R. 101.1(c)(1) (governing pro hac vice admission).

                iv.   Administrative Tasks

Liberty objects to certain billing entries because it claims they reflect administrative tasks. "As a general rule, time that would not be billed to a client cannot be imposed on an adversary. Thus, administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." Holzhauer v. Hayt, Hayt, & Landau, LLC, No. 11-2336, 2012 WL 3286059 (D.N.J. Aug. 10, 2012).

Liberty objects to three entries related to attorney training on Veritext deposition software and one entry related to budgeting.  The Court will allow United to bill for the time its attorneys took to learn the Veritext software.  The legal work necessary to take a deposition includes a significant amount of preparation.  This includes logistical preparation to ensure the deposition runs smoothly.  Two of United's lawyers spent a total of 3.2 hours learning how to use deposition software which was necessary to conduct a deposition at the height of the COVID-19 pandemic. It was necessary for attorneys, rather than other members of a litigation team, to have familiarity

with the software because they would ultimately conduct depositions. Cf. Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995) (warning that courts will not award high rates for work performed by attorneys that could have been delegated to non-professionals). Furthermore, 3.2 hours is a reasonable amount of time for two lawyers to learn how to use deposition software. Accordingly, this time will be included in the fee award.

Budgeting, however, is an administrative function. Maintaining budgets for pending matters is part of a law firm's overhead which is not normally billed out to clients. See Bilazzo, 876 F. Supp. 2d at 471-72 (listing similar administrative tasks). That United actually paid their lawyers for this time does not automatically make it reasonable to bill to a client. See Halderman, 49 F.3d at 942 ("The fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."). Accordingly, 1.2 hours, worth $390, will be deducted from the final award.

          v. Prior Fees

Liberty argues that a prior $15,000 negotiated settlement of a sanction award should be subtracted from the fee award. The sanction was awarded in connection with a motion to compel two depositions and various documents. (ECF No. 44). The Court ordered the parties to conduct a lodestar analysis, but instead the parties settled the sanction award for $15,000. (ECF No. 136-1 ¶ 8). United argues that doing so would reward Liberty for its obstructionist tactics. In reality, the Court awarded "reasonable expenses (including attorneys' fees) incurred in making [United's] motion to compel." (ECF No. 44 at 10-11). The settled amount therefore is compensation for work performed by United. If United were paid without deducting that amount, they would be

19

double compensated for the work associated with the motion to compel. The purpose of attorney's fee awards is generally to make prevailing parties whole, not to enrich them when their adversary engages in dilatory tactics. See Occhifinto, 221 N.J. at 450 (discussing the purposes behind N.J. Ct. Rule 4:42-9(1)(6)). The fee award will therefore be reduced by $15,000.

### III. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion for attorney's fees in part, in the amount of $299,587.80 for 1,119.6 hours of work, in addition to costs of $4,973.15, for a total award of $304,560.95. An appropriate order will be filed.

      s/ Stanley R. Chesler
      STANLEY R. CHESLER
      United States District Judge

Dated: October 14, 2022