<u>FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED RENTALS (NORTH AMERICA), INC., | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :    **Civil Action No. 19-17169 (SRC)** <br> : <br> :    **OPINION & ORDER** |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | : <br> : <br> : |
| Defendant. | : <br> : |

<u>**CHESLER**</u>, District Judge

    This matter comes before the Court on Defendant Liberty Mutual Fire Insurance Company's ("Liberty Mutual") motion for recusal of the undersigned pursuant to 28 U.S.C. § 455(a). Plaintiff United Rentals (North America), Inc. ("United") opposes the motion. The Court heard oral argument on the motion on June 6, 2024.

    Liberty Mutual's motion is problematic for three main reasons. First, it is a direct attack on the integrity and ethics of the Court with no legal support whatsoever.[1] Second, this attack is based

---

[1] At oral argument, counsel for Liberty Mutual, Mr. Gary S. Kull, Esq. of Kennedys CMK LLP, was asked whether he had identified a "single case which supports th[e] contention" that "a customer of an insurance company . . . for forty years who has had no disputes with the insurance company . . . was required to disclose and disqualify himself from the case." Mr. Kull responded that "we looked for one," and was asked flat-out by the Court: "you have just admitted that you have not been able to find a single case which stands for that proposition. Correct?" Mr. Kull responded, "Right." Oral Argument Transcript at 27:3-28:16 [hereinafter "O.A. Tr."].

on information which Liberty Mutual had in its possession and could have acted on at any time in this litigation, but only chose to do so now after it was dissatisfied with the result of a dispositive motion, raising serious questions about the propriety of the conduct of a major national insurer and repeat litigant before the federal courts. And third, as stated bluntly at oral argument, Liberty Mutual advances the untenable proposition that any judge who is a policyholder of an insurer must disclose that status and recuse themselves from cases where the insurer is a party. That argument, which would render hundreds, if not thousands, of judges incapable of presiding over large swaths of their dockets, cannot be the standard envisioned by the framers of 28 U.S.C. § 455.

Thus, for these reasons and those that follow, the motion will be denied.

## I

This case is a declaratory judgment action brought by United seeking a declaration that United is entitled to coverage as an additional insured under a Liberty Mutual policy. United leased a boom lift used during construction on the Whitestone Bridge, that lift was involved in an accident, the victims filed personal injury actions, and United was named as a third-party defendant in one of these actions (the "New York Actions"). See (ECF No. 87-13). Liberty Mutual insured the operator of the lift, and United filed this action on August 23, 2019 to obtain a declaration that it was entitled to coverage under the policy issued to the operator. See (ECF Nos. 1, 27).

This Court has issued four opinions in the case. The first, issued on April 28, 2022, granted United's motion for partial summary judgment and denied Liberty Mutual's cross-motion for partial summary judgment, holding that "United Rentals qualifies as an additional insured under the Policy, that Liberty is obliged to defend United Rentals in the New York Actions, and that Liberty must reimburse United for all costs of defense in the New York actions." (ECF No. 111 at 16). The second, issued on June 16, 2022, denied Liberty Mutual's motion for reconsideration of

the summary judgment opinion and denied certification for interlocutory appeal. (ECF No. 121 at pp.1, 3); see Gibson v. State Farm Mut. Auto. Ins. Co., 994 F.3d 182, 190 (3d Cir. 2021); L. Civ. R. 7.1(i). Liberty Mutual subsequently appealed the order granting partial summary judgment, which the Third Circuit dismissed for lack of appellate jurisdiction. (ECF No. 128); United Rentals N. Am., Inc. v. Liberty Mut. Fire Ins. Co., No. 22-2297, 2024 WL 302179, at *1 (3d Cir. Jan. 26, 2024). Meanwhile, this Court issued its third opinion in this matter, granting in part and denying in part United's motion for attorney's fees. (ECF No. 139). Finally, on February 2, 2023, the Court issued its fourth opinion, which denied United's motion to enforce the attorney's fees judgment. (ECF No. 156 at pp.2-3); see Fed R. Civ. P. 54(b); In re Diet Drugs Prods Liab. Litig., 401 F.3d 143, 156 (3d Cir. 2005).

On February 7, 2024, Liberty Mutual moved for summary judgment to dispose of the final remaining claim in the case. (ECF No. 165-4 at p.1). This Court scheduled a settlement conference before the undersigned. On May 6, 2024, Mr. Kull, counsel for Liberty Mutual, requested an adjournment of the settlement conference to accommodate a personal scheduling conflict and, more importantly for the present motion, because "Liberty Mutual recently discovered that Your Honor is a policyholder of Liberty Mutual [and] believes this fact should have been disclosed at the outset of this litigation." (ECF No. 177 at p.1). The Court then converted the settlement conference to an on-the-record status conference, noting in its order that "the Court has serious concerns about the propriety of counsel's conduct, as disclosed in the [May 6, 2024] letter." (ECF No. 179). Mr. Kull "object[ed] to the conference on May 22, as it appears the Court intends to substantively address the conflict issues prior to our motion being filed." (ECF No. 182 at p.2). The Court denied Mr. Kull's request for an adjournment of the conference. (ECF No. 183).

During the conference, Mr. Kull affirmed Liberty Mutual's position that the undersigned should have disclosed his status as a Liberty Mutual policyholder at the outset of the litigation. Mr. Kull disclosed that Liberty Mutual "discovered" the undersigned's status as a policyholder when it decided to search its records upon review of the Court's summary judgment opinion. (ECF No. 185 at 10:11-16; 11:20-12:17) [hereinafter "Conference Tr."]. More specifically, Mr. Kull noted that "there was something about the tenor of the decision that . . . seemed negative in a way that was more than usual." Id. at 12:4-6. Mr. Kull expressed that, in his judgment, the undersigned's status as a policy holder of Liberty Mutual and submission of claims under those policies after the case was assigned to him required disclosure under 28 U.S.C. § 455(a). Conference Tr. 12:25-13:9.

Following this colloquy, the Court directed counsel for Liberty Mutual to contact the Chief Legal Officer of Liberty Mutual, Mr. Damon Hart, Esq., and have the entire transcript of the day's proceedings read to him in order to confirm Mr. Kull's assertion of Liberty Mutual's position with respect to the conflict issue in this case. Conference Tr. 20:10-14; 23:7-8. After a recess, Mr. Kull advised the Court that it was very important for Liberty Mutual to "preserve this issue" and the Court asked Mr. Hart if he contended that the undersigned was still required to disclose his status as a policyholder. Id. at 24:23-24. Mr. Hart advised that this indeed was Liberty Mutual's position:

> THE COURT: The other thing I want to know is this: Is it still Liberty Mutual's position that I was required to disclose the fact that since 19 -- what was it, 1988?
>
> MR. KULL: I think it's '80.
>
> THE COURT: -- 1980 that I have been an insured under Liberty Mutual? Is that still the company's position? And, Mr. Hart, you can answer that.
>
> [ . . . ]

MR. HART: Yes, Your Honor. And obviously I was just brought into this case today, and I do believe that we should have been given notice, and certainly at the time the claim is being put forward while the case was pending, it's our position.

Id. at 25:9-25. The Court advised the parties that the case would not proceed "while somebody is questioning my integrity and my ethics" and directed Mr. Kull to file a recusal motion within ten days. Id. at 25:21-25, 26:5-6. This motion followed. (ECF No. 187-2). The Court heard oral argument on June 6, 2024.[2]

## II

"The right to trial by an impartial judge 'is a basic requirement of due process.'" Haines v. Liggett Grp. Inc., 975 F.2d 81, 98 (3d Cir. 1992) (quoting In re Murchison, 349 U.S. 133, 136 (1955)). The federal recusal statute, 28 U.S.C. § 455(a), provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test for recusal under the statute is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Intern. Ltd. (Kensington I), 353 F.3d 211, 220 (3d Cir. 2003) (citing Edelstein v. Wilentz, 812 F.2d 128 (3d Cir. 1987)). The "polestar" in interpreting Section 455(a) is "'[i]mpartiality and *the appearance of impartiality*.'" Haines, 975 F.2d at 98 (quoting 28 U.S.C. § 455(a)) (modifications in original). Section 455(a) does not require scienter, but the provision "can be applied retroactively" once the judge becomes aware that they have an interest in the outcome of the litigation. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 861 (1988). "A judge is as much obliged not to recuse himself when it is not called for as he

---

[2] Mr. Kull objected to any oral argument made by United in opposition to Liberty Mutual's motion. While United did present oral argument, the Court advised Mr. Kull that it would not consider those arguments in its decision on the merits of the motion. O.A. Tr. 40:11-12. The only aspect of United's appearance at oral argument that this Court will consider is United's recorded opposition to Liberty Mutual's motion.

is obliged to when it is." <u>Franco v. Conn. Gen. Life Ins. Co.</u>, No. 07-6039, 2013 WL 1629054, at

*3 (D.N.J. Apr. 15, 2013) (quoting <u>In re Literary Works in Electronic Databases Copyright Litig.</u>,

509 F.3d 136, 140 (2d Cir. 2007) (internal quotation omitted)).

The undersigned has been a Liberty Mutual customer since 1980 and holds four Liberty

Mutual insurance policies: a homeowner's insurance policy for the undersigned's primary home

address, a separate homeowner's insurance policy for the undersigned's vacation home, an

automotive insurance policy covering the undersigned's family vehicles, and a personal liability

protection policy.[3] Over the forty-four years that the undersigned has been a Liberty Mutual

customer, the undersigned has made only fourteen claims across all four of his policies. (ECF No.

187-2 at p.8).

Liberty Mutual makes two arguments for recusal: First, that the undersigned's insured

status, claim history, and recent claims with Liberty Mutual would lead a reasonable person to

doubt the undersigned's impartiality; and second, that the undersigned's failure to disclose these

facts heightened the appearance of partiality, thus also requiring recusal. Since the standard for

when a judge is obligated to disclose any fact which might give rise to an appearance of partiality

is whether such a fact would create an appearance of partiality, <u>see</u> <u>In re Kensington Intern. Ltd.</u>

---

[3] Liberty Mutual, in support of the factual assertions in its motion, submitted no evidence—either documentary or otherwise—substantiating its contentions about the undersigned's claims history. Liberty Mutual indicated that "[t]o the extent the Court would like to review any or all of those [insurance policies and claims materials], or would like them to be a part of the record, we can provide them for in camera review or file them under seal." (ECF No. 187-2 at p.4 n.1). In view of the fact that, as will be discussed <u>infra</u>, Liberty Mutual's factual assertions about the Court's claims history, coupled with its omissions and concessions, is more than adequate to demonstrate that its application is without any legal or factual basis, and in view of the fact that Liberty Mutual has already opted to disclose substantial "personal information regarding Judge Chesler and his family," <u>id.</u>, the Court concludes that, despite Liberty Mutual's asserted concern over the privacy of the Court's dealings with Liberty Mutual, it will decline that offer. To the extent the Court relies upon and includes in this Opinion more details than those disclosed from the undersigned's file by Liberty Mutual, those details were disclosed by the undersigned during oral argument and conceded to by Liberty Mutual.

(<u>Kensington II</u>), 368 F.3d 289, 313-14 (3d Cir. 2004), these two arguments reduce to the same contention: that the undersigned's relationship and claim history with Liberty Mutual would lead a reasonable person to question the undersigned's impartiality in this case. The claim history which Liberty Mutual asserts might cause a reasonable person to doubt the undersigned's impartiality will be detailed in context below.

## A

The first basis that Liberty Mutual asserts for its contention that the undersigned is required to recuse is the undersigned's historical relationship with Liberty Mutual. In short, Liberty Mutual asserts that the undersigned's claim history should have led him to recuse himself at the outset of this litigation because "Section 455(a) clearly addresses situations where the potential that someone could question the court's impartiality exists[,]" and "[h]ere, Judge Chesler should have disqualified himself because his impartiality could reasonably be questioned." (ECF No. 187-2 at pp.16-17); <u>see also</u> <u>Alexander v. Primerica Holdings, Inc.</u>, 10 F.3d 155, 162 (3d Cir. 1993) ("Whenever a judge's impartiality 'might reasonably be questioned' in a proceeding, 28 U.S.C. § 455(a) commands the judge to disqualify himself *sua sponte* in that proceeding.").

A major problem, which will be addressed more fully below but bears mention at the outset, is that Liberty Mutual had in its possession all of the information that it now relies upon to argue that the undersigned should have disclosed or recused from the very beginning of this litigation. <u>See</u> <u>Kensington II</u>, 368 F.3d at 314-15 ("[W]hen a party's attorney is aware of the grounds supporting recusal, but fails to act until the judge issues an adverse ruling, the recusal motion is not timely."); <u>see</u> <u>infra</u> Section II(C)(2). In other words, beyond the internal problems with the factual arguments that Liberty Mutual makes based on the undersigned's claims history, there is a

fatal legal problem with Liberty Mutual even asserting that the facts discussed in this section would have required recusal.

Kensington II notwithstanding, there are three problems with Liberty Mutual's contentions based on its historical relationship with the undersigned.

First, Liberty Mutual contends generally that the undersigned's claim history would require recusal. Liberty Mutual's argument on this point centers on several claims, made in the late '00s and early 2010s, related to various pieces of missing jewelry. On May 1, 2008, a representative of Liberty Mutual conducted an interview at the undersigned's home. This was, unbeknownst to the undersigned at the time, part of an alleged "investigation" conducted by Liberty Mutual's special investigation unit ("SIU"), initiated after an April 27, 2008 claim was "red flagged." (ECF No. 187-2 at p.18). Liberty Mutual asserts that a "reservation of rights letter" was issued to the undersigned's home address after this investigation had concluded. Id. The jewelry was later found, and the claim was withdrawn.

The problem with this contention is twofold. Except for the fact that a representative of Liberty Mutual interviewed the undersigned and his wife, there is no assertion that the undersigned or his wife were ever made aware that the April 27, 2008 claim was "red flagged," that "an investigation was conducted by SIU," or that Liberty Mutual was at all concerned about their claim history—indeed, Mr. Kull conceded at oral argument that the undersigned would not have been informed that he was under investigation by the SIU. O.A. Tr. 18:6-9. The undersigned is unaware that a "reservation of rights letter" was issued, or what it contained, the undersigned's Liberty Mutual online portal contains no indication of the issuance of such a letter, and Liberty Mutual has provided no evidence concerning that letter aside from an assertion in its brief about the letter's existence. Moreover, Liberty Mutual has never even described what the "reservation of rights

letter" said nor how its contents (or the mere fact of its issuance) might cause a reasonable person to doubt the undersigned's impartiality.

Next, Liberty Mutual contends that two additional claims, from March 26, 2012 and February 20, 2014, were referred to SIU for investigation because of "a loss history showing that the Cheslers had made prior claims for lost, stolen, and mysterious disappearances of jewelry." (ECF No. 187-2, at p.6). Liberty Mutual does not even purport to claim that the undersigned or his spouse were advised that these claims were referred to SIU for investigation. In fact, while Liberty Mutual's brief says that the claims were "referred by Liberty Mutual's claims department to SIU for investigation" (ECF No. 187-2 at p.6), insinuating that indeed such an investigation was conducted, *it was only during oral argument, following specific questioning by the Court, that Mr. Kull disclosed that in fact such an investigation never occurred*, *that SIU concluded no investigation was warranted, that SIU sent the claims back to the claims department, and the claims were paid without any challenge by Liberty Mutual or the undersigned*. O.A. Tr. 17:20-18:23. In short, Liberty Mutual's brief relied upon slyly suggesting that the undersigned would be biased because of a further "investigation" of his claims activity, but conveniently omitted—and did not acknowledge until the Court pressed Mr. Kull at oral argument—that no such investigation ever occurred. Compare (ECF No. 187-2 at p.6) with O.A. Tr. 17:20-18:23. Thus, except for the missing bracelet from 2008, which was ultimately found, all the other lost or missing jewelry claims were paid by Liberty Mutual. This suggests that whatever issues, suspicions, or "red flags" Liberty Mutual may have had with respect to these earlier jewelry claims *were either not substantiated by the SIU or not even investigated by them*. Nevertheless, Liberty Mutual argues "[a]n investigation related to multiple insurance claims could result in negative impressions by the insured towards its insurer. It would not be unreasonable to believe that the person subjected to

such an investigation might harbor some displeasure towards his insurer." (ECF No. 187-2 at p.18). Given the above, it is hard to understand how Liberty Mutual can seriously argue that "an investigation relating to multiple insurance claims could result in a negative impression by an insured towards its insurer" and that "it would not be unreasonable to believe that the person subjected to such an investigation might harbor some displeasure towards his insurer," when here, except for one claim (which was withdrawn), all claims were paid by Liberty Mutual and Liberty Mutual has never demonstrated that the undersigned or his spouse were ever even aware of such an investigation. (ECF No. 187-2 at p.18).

Second, one would assume that if Liberty Mutual had such deep concerns, Liberty Mutual would have, at a minimum, declined to pay subsequent lost jewelry claims and declined to issue new policies, and, at a maximum, terminated some or all of the undersigned's policies.

And third, it is difficult to see how a reasonable observer could conclude that the undersigned had such a negative impression of Liberty Mutual as to create an appearance of bias when the undersigned did not seek alternate insurance coverage and has continued his coverage with Liberty Mutual to this very day.

As Liberty Mutual agrees, the test is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." Kensington II, 368 F.3d at 301. To review, the facts are as follows: Liberty Mutual has made no factual assertions which would support the claim that the undersigned was aware of the nature of the 2008 investigation, and no action was taken by Liberty Mutual on any such "investigation." Liberty Mutual continued to pay out on similar claims and maintained the undersigned's status as an insured even after the investigation. And the undersigned continued to be a customer of Liberty Mutual for sixteen years after the date of the in-home interview (the only event that might have

given the undersigned even an inkling of affirmative knowledge of the SIU "investigation"). Taken together, a reasonable person could not conclude that the undersigned's impartiality might reasonably be questioned.[4]

## B

The second basis upon which Liberty Mutual asserts that the undersigned was required to recuse surrounds various issues of timing—chiefly, the undersigned's more recent claims on his insurance policies, four of which were filed after the inception of this action.

Three of the four can be disposed of easily. The January 24, 2020 and June 16, 2022 claims were not filed by the undersigned but rather by third parties concerning motor vehicle incidents involving the undersigned. Under his Liberty Mutual automobile insurance policy, the undersigned is insured up to $250,000 per individual and $500,000 per occurrence plus up to $4 million via an umbrella liability policy. Mr. Kull conceded at Oral Argument that these two claims concerned minor property damage incidents with no bodily injury. O.A. Tr. 21:25-22:11. Surely, neither claim would approach the generous limits of the undersigned's insurance policies in a manner that might have required the undersigned's knowledge of the amount paid out to third parties. The third claim, from August 25, 2019, was concededly made two days after United's complaint was filed and the undersigned was assigned to this case. (ECF No. 1); O.A. Tr. 10:18-11:3. That claim was for the undersigned's 2017 Subaru Forester which was totaled in a multi-vehicle accident. Liberty Mutual paid out $6,523.24 on September 18, 2019 in connection with this claim (before Liberty

---

[4] Particularly telling on this score is United's silence—and, in fact, their *opposition* to this motion—in the face of Liberty Mutual's accusations of impropriety. In truth, these facts would indicate a positive history over forty-four years of insurance coverage with Liberty Mutual. To the extent the undersigned's affiliation with Liberty Mutual would create any doubt about the undersigned's impartiality, one would expect the party *opposite* the insurance company to raise that objection. That they have not speaks volumes about what a reasonable person might conclude when presented with the facts asserted herein.

Mutual had even answered the complaint). (ECF No. 187-2 at p.5); (ECF No. 7). As conceded by Liberty Mutual, the claim was amicably resolved before the undersigned had begun any substantive work on this case. O.A. Tr. 16:24-17:3. Moreover, the undersigned had not begun any substantive work on this case until, at the earliest, when United filed its first summary judgment motion on January 21, 2022. In the District of New Jersey, there is usually little reason for a District Judge to become intimately involved in or familiar with any particular case until a dispositive motion is filed. See L. Civ. R. 37.1. Just so here: Judge Waldor ably oversaw the extensive discovery and motion practice in this case prior to the filing of the first summary judgment motion. See (ECF Nos. 1-85). In short, the undersigned was effectively uninvolved in this case for the first two and a half years of its pendency, so a claim filed shortly after the initiation of the suit would not lead a reasonable person to question the undersigned's impartiality.[5]

The fourth and final claim, from October 4, 2022, involved a tree branch which fell through the undersigned's roof during a fall storm, flooded the attic, and damaged the roof and insulation. Liberty Mutual points out that this claim was made "ten days prior to the Court's order awarding United $300,000 in attorney's fees" (ECF No. 187-2 at p.5), implying that this timing reveals some prejudice by the undersigned. Unfortunately, this assertion ignores the fact that months before, on April 28, 2022, this Court granted Plaintiff's motion for partial summary judgment which disposed of the major substantive claim in this case. (ECF Nos. 111 & 112). It also ignores the fact that on

---

[5] Even if this were not the case, the substance of the claim further undermines Liberty Mutual's assertion here. After a multi-vehicle accident which resulted in the undersigned's car being completely totaled, Liberty Mutual paid the undersigned $6,523.23. The undersigned did not contest or challenge that amount. Surely, if the undersigned were dissatisfied with the result of the claim in such a way that might bias him against Liberty Mutual, he would have appealed or in some way objected to the payout on that claim. That no such objection is noted by Liberty Mutual dooms any assertion that this claim could give rise to a question regarding the undersigned's impartiality. Moreover, there is not the slightest suggestion by Liberty Mutual that, at any point in time during the undersigned's dealings with it, he ever attempted to use his position or the pendency of this case to secure a favorable result.

June 14, 2022, long prior to submitting the roof and rain damage claim, the Court had also denied Liberty Mutual's motion for reconsideration. (ECF No. 121). Liberty Mutual's argument further ignores that, as the Court's opinion indicated, N.J. Ct. R. 4:42-9(1)(6) specifically provides that attorney's fees are available "in an action upon liability or indemnity policy in favor of a successful claimant." N.J. Ct. R. 4:42-9(1)(6). Here, United had successfully obtained a declaratory judgment confirming Liberty Mutual's duty to defend. It clearly was a "successful claimant" at that point. See Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 451-52 (2015) (citing Schmidt v. Smith, 294 N.J. Super. 569, 591 (App. Div. 1996)) (defining "successful claimant" to include an insured that obtains a declaratory judgment confirming an insurer's duty to defend). In other words, as a matter of law, Liberty Mutual's argument ran afoul of clear New Jersey law which entitled United to attorney's fees. Further, its argument ignores the fact that the attorney's fee decision did not grant United's motion in full and that the court later declined to grant a motion to enforce the fee award. See (ECF No. 111 at pp.9-20 & ECF Nos. 156 & 157).

In short, Liberty Mutual had already lost and appealed the Court's determination that it was required to defend United *before the undersigned filed the October 4, 2022 claim*. Had the undersigned been clairvoyant and realized that a tree branch would fall on his home during the pendency of this case, that argument might warrant some credence, but clairvoyance cannot be the standard required by Section 455(a). See Liljeberg, 486 U.S. at 861 ("[Section 455(a)] does not call upon judges to perform the impossible—to disqualify themselves based on facts they do not know . . . .").

As a final note on timing as it relates to the recent claims, Liberty Mutual makes much of the fact that the Court decided the partial summary judgment and reconsideration motions extremely rapidly. (ECF Nos. 187-1 Ex. 1; 187-2 at pp.8-9, 19). As the Court noted at oral

argument and Mr. Kull agreed, a common complaint among attorneys practicing before state and federal courts is the undue delay of judges in deciding pending motions. O.A. Tr. 13:3-10. Thus, Liberty Mutual's complaint that the Court was too quick in disposing of its motions is probably unique in the annals of legal history. It hardly supports a claim of apparent bias. To the extent the speed at which the undersigned issued the decision concerns the parties, the undersigned hereby apologizes for that speed.[6]

Finally, Liberty Mutual devotes most of its motion to explaining why the summary judgment decision was erroneous, implying that the magnitude of the legal error would cause a reasonable person to question the Court's impartiality. If an appeal is made after the entry of final judgment, Liberty Mutual will be free to demonstrate the undersigned's substantive error to the Third Circuit, but now is not the proper time to attack the summary judgment opinion's substantive validity. See Zenith Ins. Co. v. Newell, 78 F.4th 603, 608-09 (3d Cir. 2023) (dismissing appeal because district court's summary judgment decision holding that insurer had a duty to defend did not constitute a final order).

In sum, none of the timing issues rise to the level of a credible assertion that might raise questions about the undersigned's impartiality. Two of the recent claims were not filed by the undersigned, and the timing issues alleged in connection with the remaining two are entirely irrelevant to any allegation of bias. The speed with which the undersigned decided the summary

---

[6] Cf. Charles Toutant, Are Judges Making Decisions to Keep Themselves Off the '6-Month List'?, New Jersey Law Journal (June 5, 2024, 5:43 PM), https://www.law.com/njlawjournal/2024/06/05/are-judges-making-decisions-to-keep-themselves-off-the-6-month-list/ [https://perma.cc/AL9T-QWC3] ("I think it's a mistake to assess the quality of a particular judge based on only one criteria. Some judges might be a little faster than others, some judges might be a little more thorough or a little more academic than others . . . . And that doesn't mean one is better than the other. It's just different strokes for different folks.").

judgment and reconsideration motions is likewise irrelevant, and finally, this forum is entirely inappropriate to test the substantive validity of the Court's summary judgment opinion.

C

The final basis upon which Liberty Mutual makes its argument for recusal can be characterized as a legal argument that the undersigned's failure to disclose his claims history, pending claims, and status as an insured affirmatively *created* a doubt as to his impartiality that violated Section 455(a) and required recusal. In Liberty Mutual's words, "being a policyholder of Liberty, and submitting claims while handling this case, created the possibility of a dispute arising between Liberty and Judge Chesler. Any type of coverage dispute—if Liberty had disclaimed coverage or paid less than what Judge Chesler should have been paid—would have led to a direct conflict during the pendency of this case." (ECF No. 187-2 at p.15). This argument echoes the claims made by Mr. Kull during oral argument where he asserted that "I don't understand how judges can be in cases when the parties are also their insurer." O.A. Tr. 6:4-5. As noted earlier, Liberty Mutual presents absolutely no authority which is directly on point supporting its contention that the mere "possibility" of a coverage dispute requires disclosure and warrants recusal. Instead, it discusses four cases which, according to Liberty Mutual, stand for the proposition that a judge's failure to disclose their insured status in an action before them where their insurer was a party creates a question regarding the judge's impartiality. It then also cites an additional case to make the argument that, to the extent there is a burden of disclosure, such a burden lies with the Court, and the undersigned failed to meet that burden in this case.

Ultimately, none of the cases cited by Liberty Mutual support its contention that the undersigned was required to recuse himself or to disclose that he carried an insurance policy with Liberty Mutual. The Court will address each caselaw-based argument in turn.

1

The four cases which form the core of Liberty Mutual's argument on its broader point—
that the undersigned, or a judge in his position, was obligated to disclose his insured status—are
entirely inapposite. Moreover, they are flatly controverted by the relevant Judicial Conference
ethics advisory opinion. Judicial Conference of the United States, Committee on Codes of
Conduct, Advisory Op. 26, <u>Disqualification Based on Holding Insurance Policy from Company
that is a Party</u> (last revised Feb. 2024) [hereinafter "Advisory Op. 26"].

The first two are prior decisions of the undersigned on recusal motions in class actions
stemming from insurance policies issued by Aetna and Cigna. In both cases, the undersigned
discovered during the pendency of the litigation that, through a change in provider by his wife's
insurer, the undersigned was an additional insured. <u>Franco</u>, 2013 WL 1629054, at *1; <u>In re Aetna
UCR Litig.</u>, 07-3541, 2013 WL 1622160, at *2 (D.N.J. Apr. 15, 2013). Liberty Mutual makes
much of the distinctions between those two cases on the one hand, which it asserts should have
guided this Court's conduct in the present case, and this case on the other. (ECF No. 187-2 at
pp.12-15). Stunningly, Liberty Mutual's motion elides a key, glaring distinction between those
cases and this one: **<u>Franco</u> and <u>Aetna</u> were class actions, and this case is not.** In a class action,
while a named class member represents the interests of unnamed class members, those unnamed
members are in fact plaintiffs to the case. <u>See</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 808-
09 (1985) (citing <u>Hansberry v. Lee</u>, 311 U.S. 32, 40-41 (1940)). So, the undersigned *was arguably
a plaintiff in both of those cases*. In <u>Aetna,</u> this obvious, glaring conflict was recognized by the
Court and, despite the possibility that this conflict could be cured pursuant to 28 U.S.C. § 455(f),
the Court concluded that, since it had conducted little substantive work on the case, it was more
prudent to recuse. <u>Aetna</u>, 2013 WL 1622160, at *2. In <u>Franco</u>, the Court did exercise its authority

to renounce any potential class membership even though under the allegations in the complaint, the undersigned would have been excluded from the class because the alleged improper conduct by the insurer had occurred and been discontinued long before the undersigned obtained coverage. Franco, 2013 WL 1629054, at *5. In stark contrast, the undersigned is not, has never been, nor arguably could be, a party to this case. The need for a judge to disclose their insured status where the insurer is the defendant in a class action and in which the court is a potential class member is as woefully obvious as it is apparent that the same analysis does not apply where a judge is merely a customer of the defendant.

Referring to the undersigned's decisions in Franco and Aetna, Liberty Mutual asserts that "his handling of the prior cases in which he was faced with similar issues demonstrates that he is aware of the obligation to disclose to the parties the existence of the relationship and the possibility that he would need to recuse himself." (ECF No. 187-2 at p.12). To the contrary, the Court's handling of these cases demonstrates that the Court is fully aware of its ethical obligations and takes the required action when the situation so requires. It also demonstrates that the Court indeed did not, and does not, believe that there is the slightest basis for such action here. See Franco, 2013 WL 1629054, at *3 (quoting Literary Works, 509 F.3d at 140) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.").

The next case is an unpublished decision of the Third Circuit holding that "the accumulation of [the trial judge's] connections to the litigation endangers the appearance of neutrality that is essential for the judiciary to retain the public's trust." In re Apollo, 535 F. App'x 169, 175 (3d Cir. 2013).[7] Liberty Mutual argues that the undersigned's policyholder status, claim

---

[7] Unpublished opinions of the U.S. Courts of Appeals are not binding precedent. See Fed. R. App. P. 32.1; Internal Operating Procedures of the U.S. Court of Appeals for the Third Circuit 5.1, 5.3, and 5.7 (effective Jan. 6, 2023).

history, and more recent claims, combined with the speed of the summary judgment decision and the "tone" of that decision, constitute a "package" which would lead a reasonable person to doubt the undersigned's impartiality. O.A. Tr. 15:12-14. Reiterating many of the timing issues raised above, see supra Section II(B), Liberty Mutual argues that the undersigned's actions created a "risk of perceived partiality" similar to the risks present in Apollo. 535 F. App'x at 174. As with Franco and Aetna, this comparison ignores key distinctions between that case and this one. Critically, the trial judge in Apollo had personal, social connections to fellow board members of the plaintiff and herself sat on a board of an organization that received financial support from the defendant. Id. In this case, the "package" which Liberty Mutual relies upon is a hodgepodge of unrelated and unsupported contentions and claims which neither individually nor jointly create any picture of partiality on the part of the undersigned. The same "accumulation of . . . connections" present in Apollo is not present here: the undersigned has one connection to the defendant in this case—as a customer of forty-four years. Individual claims over the course of a forty-four year relationship are not the same thing as a judge serving on boards and attending social events with a plaintiff. Apollo, too, misses the mark.

The final case is Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988). The key holding of the case was that Section 455(a) does not contain a scienter requirement—in other words, "the statute does not call upon judges to perform the impossible—to disqualify themselves based on facts they do not know." Id. at 861. Liberty Mutual asserts that Liljeberg should have required the undersigned to recuse himself because, unlike the trial judge in that case, the undersigned was fully aware of his status as an insured of Liberty Mutual from the outset of the litigation and should recuse himself now pursuant to Liljeberg's command that Section 455(a) can be applied retroactively. Id.; (ECF No. 187-2 at pp.19-20). The scienter argument based on

<u>Liljeberg</u> fails because, unlike in that case, the undersigned did not have an interest that would have implicated Section 455(a) at all. Indeed, Advisory Op. 26 addresses this point precisely.[8] The outcome of this litigation will not, in any fashion, impact any interest of the undersigned in Liberty Mutual.

In sum, none of the four cases offered by Liberty Mutual for the contention that the undersigned was obligated to disclose are applicable here.

**2**

Liberty Mutual's final legal argument centers on the undersigned's failure to meet his burden to disclose the fact of his connection with Liberty Mutual, based primarily on <u>Kensington II</u>. Critical for Liberty Mutual's argument is Judge Garth's note that "if there is to be a burden of disclosure, that burden is to be placed on the judge to disclose possible grounds for disqualification." <u>Kensington II</u>, 368 F.3d at 313 (citing <u>United States v. Bosch</u>, 951 F.2d 1546, 1555 n.6 (9th Cir. 1991)). This Court wholeheartedly agrees. However, the <u>Kensington</u> decision cuts against Liberty Mutual in two key ways which together make clear that the burden to disclose was not implicated in this case.

---

[8] In relevant part, Advisory Op. 26 states that "in any litigation in which an insurance company is a party, if the outcome of the litigation could substantially affect the value of the judge's interest, i.e. the policy in the company involved, the judge should recuse. The judge should also recuse if any other interest (other than a financial interest) could be affected substantially by the outcome of the proceeding." Advisory Op. 26 at p.26. At oral argument, Mr. Kull argued that Advisory Op. 26 is inapplicable to this case because it was interpreting Canon 3C(1) of the Code of Conduct for United States Judges. O.A. Tr. 29:15 ("The ethics rule isn't 28 U.S.C. § 455(a)."). This argument is unsupportable: Canon 3C(1) tracks the language of the federal recusal statute almost perfectly. <u>Compare</u> <u>Code of Conduct for United States Judges</u> Canon 3C(1)(a) (U.S. Judicial Conference 2019) <u>with</u> 28 U.S.C. §§ 455(a), 455(b)(4); <u>see also</u> 28 U.S.C. 455(d)(4) ("'financial interest' means ownership of a legal or equitable interest . . . except that . . . (iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest[.]").

First, Liberty Mutual notes that "sound public policy considerations . . . militate for the adoption of a . . . rule that the parties should be apprised of any ground for disqualification known privately to the judge. The most compelling of these public policy considerations is that the judge is in the best position to know of the circumstances supporting the recusal motion." Kensington II, 368 F.3d at 314 (quoting United States v. Schreiber, 599 F.2d 534, 537 (3d Cir. 1979)); see (ECF No. 187-2 at p.22). Again, this Court wholeheartedly agrees—surely the Court should disclose when it has knowledge in its possession which could arguably form the grounds for a recusal motion. The problem for Liberty Mutual though is that, as thoroughly discussed above, none of the reasons offered by Liberty Mutual in fact constitutes grounds for disqualification and, therefore, none of these facts required disclosure.

Second, as discussed above, none of these asserted grounds for disqualification were "known privately" as to Liberty Mutual. Schreiber, 599 F.2d at 537; see supra Section II(A). Quite the contrary, all of the above-listed possible grounds for disqualification were known by Liberty Mutual at all times during the pendency of this litigation. "[W]hen a party's attorney is aware of the grounds supporting recusal, but fails to act until the judge issues an adverse ruling, the recusal motion is not timely." Kensington II, 368 F.3d at 315. Regardless of whether it deigned to find the information within its files at the outset of the litigation, Liberty Mutual had full knowledge and access to every piece of the allegedly negative information that has now been belatedly asserted in this case to justify a recusal request. Nevertheless, it only chose to search its records when it did not get the result it wanted and, as confirmed by Mr. Kull on the record, decided that it did not like the "tenor" and "negativ[ity]" of the Court's decisions. [9] Conference Tr. 10:11-16; 11:20-12:17.

---

[9] It is somewhat perplexing how or why Liberty Mutual suddenly became concerned with the negative tenor of the opinion more than two years after the opinion was issued. See (ECF No. 111) (opinion on motion for summary judgment issued on Apr. 28, 2022); Conference Tr. 12:4-6

Under <u>Kensington II</u>, the fact that Liberty Mutual had the information in its possession takes this entirely out of the burden to disclose fact pattern: Liberty Mutual had actual knowledge of the information and could have filed a recusal motion at the outset of the litigation if, in fact, it concluded that it did have a basis to file such a motion. Indeed, it appears that Liberty Mutual had information wholly within its knowledge and outside the knowledge of the undersigned which it could have (and ultimately did) use to pursue this motion—i.e., the fact of the "red flagged" and SIU-investigated 2008 claim as well as the later referred and un-referred 2011 and 2012 claims.

Therefore, Liberty Mutual's contention that the undersigned should have disclosed his affiliation with Liberty Mutual at the outset of the litigation is entirely without legal support.

### III

A final note is necessary to address several broader concerns relating to arguments made by counsel, the circumstances of this motion, and the implications of the arguments made therein.

To begin with, the alleged inciting action that led Liberty Mutual to "discover" the undersigned's status as a Liberty Mutual policyholder was a reaction to the "tone" of the summary judgment opinion. O.A. Tr. 36:2-14; <u>see also</u> Conference Tr. 12:4-12 ("the tenor of the decision . . . seemed negative"). Liberty Mutual apparently contends that it is appropriate for an insurance company to probe the claims files of one of its customers whenever that customer, who may happen to be a judge, has issued an opinion which Liberty Mutual views as having a "negative . . . tenor."[10] Conference Tr. 12:6-12. After this matter was pending for over four years, Liberty Mutual conducted a search of its files for pejorative information about the undersigned because Liberty Mutual was offended by the tone of the Court's summary judgment opinion.

---

(conference held at which Mr. Kull remarked that the "tenor of the decision . . . seemed negative" on May 22, 2024).

[10] At Oral Argument, Mr. Kull invoked both attorney-client and work product privilege to hide who at Liberty Mutual requested the search of the undersigned's file. O.A. Tr. 35:13-37:7.

Liberty Mutual then used this information as a basis for a motion to recuse the Court because it obviously was dissatisfied with the results of the case to date and sought to have another judge appointed to adjudicate the remaining claims. Section 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993). However, "we as judges must balance our duty to appear impartial against several practical considerations, including the availability of other judges, the cost in judicial resources of recusal and reassignment . . . and the interest of the parties and the public in a swift resolution of the dispute." Literary Works, 509 F.3d at 140 (internal citations and quotations omitted). The Court is convinced that this language, in a case cited by Liberty Mutual, is equally applicable here: as much as the Court might wish to wash its hands of this case, reassigning the case where recusal is not warranted would not further the interests of the federal judicial system nor be fair to the Court's colleagues.

The Court indicated at the conclusion of the May 22 conference that it would not take any further action in this case while its integrity and ethics were being questioned. Conference Tr. 26:5-6. Then, at oral argument, Mr. Kull repeatedly attempted to characterize his assertions on the record and in his motion as something other than an attack on the undersigned's integrity and ethics. O.A. Tr. 4:1-8; 7:5-9. Mr. Kull repeatedly indicated that Liberty Mutual merely sought to pursue its claim that disclosure was required. See, e.g., O.A. Tr. 7:10-14. Even a cursory reading of Liberty Mutual's moving papers reveal that the motion and the assertions contained therein in fact constitute a carefully choreographed effort to attack the integrity and ethics of this Court both directly and by innuendo. The arguments made therein skillfully insinuate, without directly stating, that improper insurance claims were made by the undersigned and his family, investigated by Liberty Mutual's SIU, and that this would lead a reasonable person to question whether the Court

was biased. Such a flagrant accusation that a judge has violated Section 455(a) is, inherently, an attack on the judge's ethics and integrity.

Finally, during oral argument, Mr. Kull explicitly explained the true implications of Liberty Mutual's position in this case when he said: **"I don't understand how judges can be in cases when the parties are also their insurer."** O.A. Tr. 6:4-5. In other words, Mr. Kull and Liberty Mutual essentially assert that, despite Advisory Op. 26, a judge who is insured by a party in a case before them is required to recuse themselves merely by virtue of that fact. If Mr. Kull and Liberty Mutual had their way, every time an insurer (or any merchant) was sued, they could move to recuse based on the judge's merchant/consumer affiliation. Given Liberty Mutual's status as a major insurance company, it is extremely likely that large numbers of the tens of thousands of state and federal judges in the United States are insured by Liberty Mutual, and, like the undersigned, have likely been satisfied policyholders for many years. Absent a financial interest in Liberty Mutual, the undersigned is simply a customer. <u>See</u> Advisory Op. 26 at 27; <u>Codes of Conduct for United States Judges</u> Canon 3C(3)(c)(iii) (U.S. Judicial Conference 2019); 28 U.S.C. § 455(d)(4)(iii). By Liberty Mutual's rationale, any time it was a party to or insured a party to a lawsuit before any of those judges, the judge's "long-term relationship" as well as their personal and claims history with Liberty Mutual would require the judge to disclose that to the parties and potentially recuse.

The unsupportability of this position is apparent on its face. Take the example of the undersigned's relationship with Costco Warehouse Club, of which the undersigned is a member and makes frequent purchases (as the Court suspects is the case for many fellow judges of this Court and many others). Clearly, those purchases would only be relevant if they suggest that the Court was biased. For instance, suppose that a slip and fall case against Costco were pending before this Court. There is no discernible reason why the Court would be required to recuse,

disclose its membership, or disclose its purchase history. But, suppose that, either shortly before or during the pendency of the case, the Court had a serious dispute about Costco's failure to accept a return under Costco's otherwise liberal return policy. That situation would begin to approach one where the Court might, out of an abundance of caution, disclose its affiliation and the incident. But regardless of whether disclosure and recusal would have been appropriate in that situation, the facts in this case do not equate to the return dispute scenario: the undersigned was in the same posture with Liberty Mutual, as far as he was aware, as he would have been with Costco sans return dispute—a happy customer who has paid for and utilized the services of a merchant over many years. No return disputes; no claim disputes. A situation where the undersigned was required to recuse in either the Costco case or this one would be untenable for the administration of justice in this country. Moreover, of course, in situations in which Liberty Mutual only *insured* a party, its involvement would not even be known to the judge unless and until a point where Liberty Mutual was required to either pay or settle the case. Liberty Mutual's position would thus create innumerable pitfalls across the judiciary. Such a situation could not have been imagined by the framers of Section 455(a). This Court will not sanction such a radical transformation of the basic tenets of judicial ethics.

*     *     *

The Court recognizes that it has devoted a substantial amount of ink to the issues presented in this motion. However, the implications of Liberty Mutual's position in this case would have a significant impact on the activities of broad classes of the federal and state judiciary. In short, the position taken by Liberty Mutual, a major insurer, with the personal approval and authorization of Mr. Hart, its Chief Legal Officer, in a motion presented by Mr. Kull, a partner of Kennedys CMK LLP, a large international law firm, is that every judge who has an insurance policy with an insurer

24

defendant and presides over a case involving that insurer defendant is required to disclose that policy's existence, the claims history, and other personal information relating to the judge's insurance and potentially recuse himself or herself. Moreover, given the genesis of this motion, Liberty Mutual's actions suggest that it believes it is entirely appropriate for an insurance company to search its files for negative and prejudicial information about the presiding judge in response to any decision by that judge which it regards as having a "tenor" that "seemed negative." Conference Tr. 12:4-7. This Court would not be meeting its responsibility if it did not soundly and firmly explain why that position is unseemly and untenable.

For these reasons,

**IT IS** on this 12th day of June, 2024

**ORDERED** that Defendant Liberty Mutual Fire Insurance Company's motion to disqualify the undersigned (Docket Entry No. 187) is **DENIED**.

                               _____s/Stanley R. Chesler_____
                               STANLEY R. CHESLER, U.S.D.J.

Dated: June 12, 2024