**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED RENTALS (NORTH AMERICA), INC., | Civil Action No.: 2:19-cv-17169 |
| Plaintiff, | Jury Trial Demanded- SRC-CLW |
| v. | Hon. Stanley R. Chesler, USDJ |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | <u>**ORAL ARGUMENT REQUESTED**</u> |
| Defendant. | |

**BRIEF OF DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Kennedys CMK LLP
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
Tel.     (908) 848-6300
Fax      (908) 848-6310
Gary.Kull@kennedyslaw.com
Gary.Sarno@KennedysLaw.com
*Attorneys for Defendant*
*Liberty Mutual Fire Insurance Company*

*Of Counsel*
Gary S. Kull, Esq.

*On the Brief*
Gary S. Kull, Esq.
Gary M. Sarno, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………….. ii

    Statutes....................................................................................................................... iii

    Rules ......................................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

    A.  The LMFIC Policy ..............................................................................................2

    B.  The Agreement.....................................................................................................3

    C.  The Underlying Actions........................................................................................4

    D.  United's Tender to LMFIC ..................................................................................6

    E.  This Declaratory Judgment Action ......................................................................7

    F.  Appeal ..................................................................................................................9

ARGUMENT .......................................................................................................................9

    A. LMFIC'S Motion For Summary Judgment Should Be Granted....................................9

    B. LMFIC Acted In Good Faith Throughout The Claims Process …..……………… 10

        1.  LMFIC Did Not Act In Bad Faith With The Purpose Of Depriving The
            Plaintiff Of Rights Or Benefits Under The Contract ......................................10

        2.  LMFIC'S Conduct Did Not Cause The Plaintiff To Suffer Injury, Damage,
            Loss Or Harm....................................................................................................15

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*

477 U.S. 317, 323 (1986)…………………………………………………………………..9

*Anderson v. LMIC Lobby, Inc.*

477 U.S. 242, 248 (1986)…………………………………………………………………..9

*Scott v. Harris*

550 U.S. 372, 378 (2007)…………………………………………………………………..9

*Halsev v. Pfeiffer*

750 F.3d 273, 287 (3d Cir. 2014)………………………………………………………..9

*Pickett v. Lloyds*

131 N.J. 457, 472 (1993)…………………………………………………..…………10, 12

*Wacker-Ciocco v. Gov't Emps. Ins. Co.*

439 N.J. Super. 603, 612-13 (App. Div. 2015)…………………………………………11

*Badiali v. New Jersey Mfrs. Ins. Grp.*

220 N.J. 544, 563 (2015)…………………………………………………………………11

*Universal-Rundle Corp. v. Commercial Union Ins. Co.*

319 N.J. Super. 223, 249 (App. Div. 1999)…………………………………………11, 12

*Anderson v. Continental Ins. Co.*

271 N.W. 2d. 368, 376-377 (1978)………………………………………………………11

*Hudson Universal, Ltd. V. Aetna Ins. Co.*

987 F. Supp. 337, 341 (D.N.J. 1997)………………………………………………...11

*Schafer v. Paragano Custom Bldg., Inc.*

2010 WL 624108 (App. Div. Feb. 24, 2010)…………………………..……...12, 13

*Kostera v. Bacharach Inst. For Rehab*

No. A-1991-13T4, 2015 WL 4643642, at *16 (N.J. Super. Ct. App. Div. Aug. 6, 2015)…………………………………………………...……………………...…………12, 13

*Port Auth. Of New York & New Jersey v. RLI Ins. Co.*

No. A-4862-18, 2021 WL 3177713, at *3 (N.J. Super. Ct. App. Div. July 28, 2021)………………………………………………………….……………………...…………12, 13

*Badiali v. N.J. Mfrs. Ins. Grp.*

    220 N.J. 544 (2015)…………………………………………………………………14


**Statutes**

N.Y. Labor Law §§ 200(1), 240, and 241(6)……………………………………......….…4, 5


**Rules**

Fed. R. App. P. 4(a)(4)(iv)………………………………………………………………9

Federal Rule of Civil Procedure 56(c)………..…………………………………………9

Federal Rule of Civil Procedure 56(e)…………………………………………………..9

**PRELIMINARY STATEMENT**

This coverage action arose out of two lawsuits filed by two employees of Conti Enterprises, Inc. ("Conti") against United Rentals, Inc. ("United") and others (the "Underlying Actions"), alleging they sustained injuries when a boom lift, leased by United to Conti, malfunctioned.  The original focus of this case was whether United qualified as an additional insured under the general liability policy issued by Liberty Mutual Fire Insurance Company ("LMFIC") to Conti (the "LMFIC Policy").  That portion of the case was decided by this court in favor or United, and is currently on appeal to the Third Circuit.

With this motion, LMFIC seeks a dismissal of the remaining portions of United's complaint in this case, including the allegation that LMFIC breached the covenant of good faith and fair dealing (also referred to as "bad faith)".

As to its claim for bad faith, United alleges that LMFIC breached the covenant of good faith and fair dealing when it did not agree that United was an additional insured on the LMFIC Policy.  Based on the facts of this case, the allegations of the Underlying Actions, and New Jersey law, there is absolutely no merit to United's claim of bad faith.

LMFIC had a reasonable basis to reject United's additional insured tender.  There were no allegations in the Underlying Actions that Conti was liable in any way for the Plaintiffs' injuries – it was not even named as a defendant by either Plaintiff, and Conti never was added as a defendant by United via third-party complaint.  Therefore, it never was alleged, and certainly never could have been determined by the Court in either underlying action, that United's liability was caused by Conti's use or operation or maintenance of the boom lift.  Rather, the Plaintiffs sought to hold United liable for its own negligence, which means that United cannot qualify as an additional insured on the LMFIC Policy.

Even though this Court disagreed with LMFIC on this issue, the reasoning set out in the preceding paragraph was the reasoning relied on by LMFIC in determining that United was not an

1

additional insured on the LMFIC Policy. That reasoning was sound, and certainly was not arbitrary or irrational or in any way unreasonable. LMFIC's position was and still is supported by the policy language, the facts of the case, and by several unpublished decisions of the New Jersey Appellate Division. There also is no New Jersey decision that is directly on point, and certainly no decision that finds that LMFIC's position was wrong. LMFIC's coverage position, therefore, did not contradict New Jersey case law, but actually found support in it.

Under New Jersey law, there is a high burden to meet in order to demonstrate an insurer acted in bad faith towards an insured. The insured is required to demonstrate (1) the absence of a reasonable basis for denying coverage, and (2) a reckless disregard of the lack of a reasonable basis for the denial. If an insurer's coverage position is determined to be "fairly debatable", then as a matter of law, there can be no bad faith.

Based on the allegations of the Underlying Actions, and New Jersey law, the issue of whether United qualified as an additional insured under the LMFIC Policy was, at a bare minimum, "fairly debatable". Thus, no cause of action for bad faith can be sustained against LMFIC. Furthermore, even if it could, United has failed to establish that it suffered any damages as a result of the alleged bad faith.

LMFIC submits that this Court should grant this motion for summary judgment dismissing with prejudice all remaining claims in United's complaint.

## I.      Statement of Facts[1]

### A.      The LMFIC Policy

LMFIC issued to Conti Enterprises, Inc., a commercial general liability policy effective March 31, 2010 to March 31, 2011 (the "LMFIC Policy") (See Exhibit 1 to Kull Certification). The LMIC Policy contains an endorsement entitled "Additional Insured – Lessor of Leased

---

[1] See Statement of Material Facts attached hereto at Exhibit A

Equipment – Automatic Status When Required In Lease Agreement With You" (the "AI Endorsement") which provides as follows:

> A. Who Is An Insured (Section II) is amended to include as an additional insured any person or organization from whom you[2] lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.  A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.
> (Kull Cert. Ex. 1, Form CG 20 37 04).

**B.      The Agreements**

United and Conti entered into a National Account Agreement on August 1, 2009.  The National Account Agreement that was produced in this litigation did not contain any provisions related to insurance or any "Schedules". (Kull Cert., Ex. 2).

In its moving brief for summary judgment, United raised for the first time in this litigation that the August 1, 2009, National Account Agreement contained "Schedules" identical to the ones in an August 1, 2017, National Account Agreement.  Based on the review of the documents produced in this litigation, Conti was not aware of these "Schedules".  Even accepting as true United's representations that the "Schedules" attached to the August 1, 2017 National Account Agreement were the same ones attached to the August 1, 2009 National Account Agreement signed by Conti, then Conti agreed to add United Rentals as an additional insured only to the extent that United is not negligent (Id.).

---

[2] "You" and "you" in defined in the LMIC Policy as the Named Insured.

In all, United has submitted evidence of four (4) separate and conflicting contracts purportedly between United Rentals and Conti addressing additional insured coverage which are broken down as follows:

1) August 1, 2009 National Account Agreement—contains no Schedules addressing additional insured coverage;

2) August 1, 2017 National Account Agreement—contains language that states "United shall be named as an additional insured for liability insurance and, if applicable, additional loss payee for property insurance only to the extent that United is not negligent and the cause of the loss is not due to the independent acts of United.";

3) August 3, 2009 Rental Agreement—contains language that states "When requested, Customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United." This contract is signed by United Rentals but not Conti; and

4) August 4, 2009 Rental Agreement--contains language that states "When requested, Customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United." This contract is signed by Conti but not United Rentals.

(Kull Cert., Ex.3).

**C.     The Underlying Actions**

United's declaratory judgment action arises out of an accident that occurred on May 6, 2010, at the Whitestone Bridge in the Bronx, New York.  Karl Fritz ("Fritz") and Richard O'Keefe, Jr. ("O'Keefe"), both carpenters employed by Conti, allege they sustained serious bodily injuries while inside a JLG Boom Lift (serial number 0300118085) ("Boom Lift") that Conti leased from United in connection with Conti's work for the City of New York at the Whitestone Bridge (Kull Cert., Ex. 4).

On or about November 10, 2010, Fritz filed a complaint for personal injuries against United and others. Fritz alleged three causes of action: (i) negligence under N.Y. Labor Law §§ 200(1),

4

240, and 241(6); (ii) breach of warranty (expressed and implied) with respect to the suitability and safety of the Lift; and (iii) strict tort liability because the Boom Lift and its parts were allegedly defective, unsafe and hazardous.  Fritz specifically alleged that the Boom Lift was "defectively designed and/or manufactured in a manner which was unreasonably dangerous. . . ."  Fritz further alleged that the defects are a "substantial factor in causing" the injuries, and the Lift "should not have been marketed in the condition that it was marketed."  Moreover, Fritz alleged that the accident was "caused **solely and wholly** by the negligence, culpable conduct, carelessness and recklessness of the defendants and/or their agents, servants and/or employees."  (emphasis added).  Conti was not named as a defendant by Fritz (Kull Cert., Ex. 5).

On April 14, 2011, O'Keefe filed a complaint against the City of New York, the Metropolitan Transportation Authority (MTA), MTA Bridges & Tunnels, and the Triborough Bridge and Tunnel Authority (TBTA) for personal injuries he allegedly sustained while using the Lift.  Neither United nor Conti were named in the O'Keefe complaint (Kull Cert., Ex. 6).

A few months later, on October 4, 2011, the MTA and the TBTA filed a third-party complaint in the O'Keefe Action alleging causes of action for contribution, common law indemnification, breach of warranty and fitness, strict products liability for design defect, liability based upon failure to warn, for breach of implied warranty, and negligence. The third-party defendants included JLG Industries, Inc. ("JLG"), United Rentals, Inc., United Rentals, and Campbell Engineering Support Services, Inc.  Conti was not named as a third-party defendant (Kull Cert., Ex. 7).

The Third-Party Complaint alleges that "[P]laintiff sustained bodily injuries as well as other damages as a result of the negligence of Third-Party Plaintiffs.  If the accident alleged in Plaintiff's Complaint occurred as alleged, it was brought about **solely** by reason of the actions and/or omissions of the Third-Party Defendants, and not that of Third-Party Plaintiffs."  (emphasis added) The Third-Party Complaint also alleges that if "[P]laintiff sustained damages in the manner

he alleged then the acts and/or omissions of JLG, United Rentals, United Rentals of North America and Campbell were the sole proximate cause of the damages thereto and not by any acts or omissions of Third-Party Plaintiffs." (Id.).

The Fritz and O'Keefe Actions (collectively the "Underlying Actions") were all consolidated, and they have been fully resolved. Conti is not a defendant in any of the Underlying Actions, and did not contribute to the settlement of either the O'Keefe Action or the Fritz Action.

### D.    United's Tender to LMFIC

On July 15, 2014, almost four years after the Fritz and O'Keefe lawsuits were filed, United tendered for the first time its demand for additional insured coverage and contractual indemnification under the LMFIC Policy to LMFIC (See Exhibit 8 to Kull Certification). The letter stated that a mediation in the Fritz and O'Keefe Actions would take place on October 10, 2014, and that United expected LMFIC to appear on its behalf. By letter dated September 9, 2014, LMFIC disclaimed defense and indemnity to United based on the fact that its liability was not alleged or known to be caused by Conti Enterprises, Inc. (Kull Cert., Ex. 9).

On October 1, 2014, United responded to LMFIC's September 9, 2014 coverage position and again demanded that LMFIC attend the October 10, 2014, mediation (Kull Cert., Ex. 10). On October 7, 2014, LMFIC again advised that it was standing by its disclaimer and that it would not provide a defense, indemnity, or attend the October 10, 2014 mediation (Kull Cert., Ex. 11).

By letter dated October 24, 2014, United made a repeated demand for a defense (Kull Cert., Ex. 12). In response, by letter dated January 20, 2015, LMFIC reiterated its denial of coverage as stated in its correspondence of September 9, 2014, and October 7, 2014 (Kull Cert., Ex. 13). LMFIC rebutted United's claim that LMFIC was issuing a bald coverage denial without adequate support, specifically stating.

> To the contrary, we have previously advised you that Conti did not cause bodily injury in this matter. Our investigation has determined that United Rentals performed maintenance for the lift on both a scheduled quarterly basis and on an as needed basis; the last such

scheduled quarterly maintenance service that you performed occurred in March 2010.

As you know, there were external and internal inspections of the lift on June 16, 2010 and July 12, 2010.  As a result of these inspections, our expert concluded:

1. Conti employees were using the machine in a normal and proper manner.

2. The Conti workers would have had no prior warning of the impending failure of the system that controlled the extension and retraction of the boom.

3. The sudden and unforeseen failure and collapse of the boom resulted from an internal defect that would have been found if United had performed the required tasks during their inspection in March 2010.

4. United Rentals was responsible for the inspection and maintenance of the lift, and Conti is not in the business of maintaining and/or repairing this type of equipment.

All defects that were observed regarding the lift were outside of the control of Conti.

The defective wire ropes were internal to the lift and therefore not visible to users.

5. It would be unreasonable to expect the Conti workers to disassemble the lift to search for unknown defects.
United Rentals is the entity that is responsible for the inspection, preventive maintenance and repair of the lift.

The letter further added that:

…The endorsement is not triggered in either suit because your liability is not alleged or known to be caused by Conti Enterprises, Inc.  That conclusion was based on our investigation to date, some of which is described above. Also, United breached the policy's Conditions requiring an insured to provide notice of claim and notice of suit.

(Id.)

**E.     This Declaratory Judgment Action**

On August 23, 2019, United filed this declaratory judgment action seeking a declaration that it is entitled to coverage as an additional insured under the LMFIC Policy issued to Conti (Kull Cert., Ex. 4).

In January 2022, United Rentals filed a motion for partial summary judgment on the duty to defend based on its contention that United qualified as an additional insured under the Additional Insured Endorsement of the LMFIC Policy because: (i) Conti agreed in writing to add United as an additional insured, and (ii) plaintiffs' injuries were caused in whole or in part by Conti's use, maintenance and ownership of the Boom Lift (Docket Entry #86).

On February 14, 2022, LMFIC filed opposition and a cross-motion for partial summary judgment seeking a ruling that LMFIC had no duty to defend because: (1) there were issues of material facts as to whether there was a written agreement requiring Conti to add United as an additional insured, and (2) there were no allegations in the complaints or in any of the facts developed during discovery that United's liability for the alleged bodily injuries of the plaintiffs was "caused, in whole or in part" by Conti's "use, maintenance or operation" of the Boom Lift (Docket Entry #94). On March 22, 2022, United Rentals filed a reply and opposition to LMFIC's cross-motion for partial summary judgment (Docket Entry #105).

Just over a month after United Rental's reply was filed, on April 28, 2022, the District Court granted United's motion for partial summary judgment finding that "United Rentals qualifies as an additional insured under the Policy, that Liberty is obliged to defend United Rentals in the New York Actions, and that Liberty must reimburse United for all costs of defense in the New York Actions." The District Court denied LMFIC's motion for partial summary judgment (Docket Entries #111 and 112). On May 12, 2022, LMFIC filed a motion for reconsideration of the Court's Opinion and Order (Docket Entries #113). On June 7, 2022, United Rentals filed opposition to LMFIC's motion (Docket Entry #120) Less than 10 days later, on June 16, 2022, the District Court denied LMFIC's motion in its entirety (Docket Entries #139 and 140).

8

### F.    Appeal

On July 14, 2022, LMFIC filed a timely notice of appeal pursuant to Fed. R. App. P. 4(a)(4)(iv) (Kull Cert., Ex. 14). On January 26, 2024, the 3rd Circuit Court of Appeals dismissed LMFIC's appeal on jurisdictional grounds only (Kull Cert., Ex. 15).

<b>ARGUMENT</b>

### A.    LMFIC'S Motion For Summary Judgment Should Be Granted.

Rule 56(c) of the Federal Rules of Civil Procedure authorizes a court to grant summary judgment "if the pleadings, depositions, answers to Interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matters that "it believes demonstrate the absence of a material fact." Celotex Corp. v. Catrett. 477 U.S. 317, 323 (1986).  Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Id. citing Fed. R. Civ. P. 56(e).  An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. LMIC Lobby. Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsev v. Pfeiffer, 750 F.3d 273, 287 (3d Cir.2014).

LMFIC is entitled to partial summary judgment as to the remaining claims in United's complaint, including its claim for indemnity, and its claim that LMFIC breached the covenant of good faith and fair dealing.  First, as the LMFIC Policy has been exhausted by the payment of settlements in the Underlying Actions, there can be no indemnity obligation to United for the Underlying Actions.  Second, United has failed to demonstrate that LMFIC was unreasonable in

9

denying that United was an additional insured under the LMFIC Policy, based on the allegations in the Underlying Actions, the language of the Additional Insured Endorsement, and the existence of relevant, unpublished case law on the issue.  Furthermore, United has failed to establish that it suffered any damages as a result of the alleged bad faith.  Consequently, LMFIC is entitled to an entry of summary judgment against United on all remaining claims in its complaint.

**B.      LMFIC Acted In Good Faith Throughout The Claims Process.**

United claims that LMFIC breached the implied covenant of good faith and fair dealing by failing to have a "fairly debatable" reason for denying coverage, and failing to participate in settlement discussions on behalf of United.  These arguments lack any merit whatsoever and warrant the entry of summary judgment in favor of LMFIC on this issue.

LMFIC properly investigated the claim and, based on the allegations contained in the Underlying Actions as well as existing New Jersey caselaw addressing additional insured coverage, denied that United  qualified as an additional insured on the LMFIC Policy.  Because United was not considered an additional insured, LMFIC properly denied any duty to defend or indemnify United for the claims in the Underlying Actions.  This coverage determination was not made in bad faith, as the issue of whether United qualified as an additional insured under the LMFIC Policy is "fairly debatable" under New Jersey law and the facts of this case, even though this Court ultimately ruled in favor of United on the issue.

**1.      LMFIC Did Not Act In Bad Faith With The Purpose Of Depriving The Plaintiff Of Rights Or Benefits Under The Contract.**

The New Jersey Supreme Court has made clear that a claim for "bad faith against an insurer in denying an insurance claim cannot be established through simple negligence" or "the mere failure to settle a debatable claim." <u>Pickett v. Lloyd's</u>, 131 N.J. 457, 472 (1993).  Rather, to establish a bad faith claim, an insured must show "the absence of a reasonable basis for denying

benefits of the policy and the [insurer's] reckless disregard of the lack of a reasonable basis for denying the claim." Id. at 472.

While grounded in contract, bad faith is an intentional tort that cannot be established without some showing of the insurer's wrongful intent. Wacker-Ciocco v. Gov't Emps. Ins. Co., 439 N.J. Super. 603, 612-13 (App. Div. 2015); see e.g., Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 563 (2015)(holding that rejection of arbitration award was not bad faith where carrier's position "was at least fairly debatable and based on a reasonable and principled reading of its policy language"); see also Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J. Super. 223, 249 (App. Div. 1999) ("While [the insurer's] decision as such was erroneous, that is not the equivalent of bad faith.").

It is also beyond dispute that an insurance company does not act in bad faith if the insured's claim is "fairly debatable." Pickett, 131 N.J. at 473. Under the "fairly debatable" standard,

> to show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent then that the tort of bad faith is an intentional one … implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is reckless … indifference to facts or to proofs submitted by the insured.

Id., quoting Anderson v. Continental Ins. Co., 271 N.W. 2d. 368, 376-377 (1978)

The "fairly debatable" standard is premised on the fact that when an insurer denies coverage with a reasonable basis to believe that no coverage exists, it is not guilty of bad faith, even if the insurer is later held to have been wrong. Hudson Universal, Ltd. v. Aetna Ins. Co. 987 F.Supp. 337, 341 (D.N.J. 1997). As explained in Hudson: "[t]he rationale for this legal principle is based upon the potential in terrorem effect of bad faith litigation upon the insurer. An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to pay the claimant." Id. at 341 (internal citations omitted). In addition, the New Jersey Appellate Division has made clear that the "fairly debatable"

standard articulated in Pickett applies to third-party liability claims as well as first-party claims. Universal-Rundle Corp., 319 N.J. Super. at 251.

In this case, the issue of whether United qualified as an additional insured under the LMFIC Policy was, at the very least, fairly debatable.  First, Conti was not sued or added as a defendant in the Underlying Actions, and there were no claims alleged in either case that it did anything wrong in connection with the accident, making it impossible for United's liability to have been caused by Conti's use of the lift (Kull Cert, Exs. 7 and 8).  Second, there are a number of New Jersey cases that support LMFIC's interpretation of the Additional Insured Endorsement and of LMFIC's position that United was not an additional insured on the LMFIC Policy (See Exhibit 15 to Kull certification).   And, third, there are no New Jersey state or federal district court decisions interpreting the identical Additional Insured Endorsement in the LMFIC Policy, and certainly no cases interpreting that Endorsement consistent with the position espoused by United in this case.

The New Jersey Appellate Division has ruled, in multiple unpublished decisions, that the "caused, in whole or in part, by" language provides additional insured coverage only to the extent that the additional insured was vicariously liable for the acts or omissions of the named insured. See Schafer v. Paragano Custom Bldg., Inc., 2010 WL 624108 (App. Div. Feb. 24, 2010), cert. denied, 202 N.J. 45 (2010) (interpreting this policy language to find that it only provides additional insured coverage for claims asserted against the purported additional insured for vicarious liability); Kostera v. Bacharach Inst. for Rehab., No. A-1991-13T4, 2015 WL 4643642, at *16 (N.J. Super. Ct. App. Div. Aug. 6, 2015) (BIR was provided coverage only for the negligent acts or omissions of the named insured and not for its own negligence).

More recently, the New Jersey Appellate Division, in another unpublished opinion addressed the "caused in whole, or in part" language in an additional insured endorsement.  In The Port Auth. of New York & New Jersey v. RLI Ins. Co., No. A-4862-18, 2021 WL 3177713, at *3 (N.J. Super. Ct. App. Div. July 28, 2021), the plaintiff, Port Authority of New York & New Jersey

12

("PANY/NJ") sought additional insured coverage under a blanket additional insured endorsement that read as follows:

> WHO IS AN INSURED is amended to include as an additional insured any person or organization that you agree in a contract or agreement requiring insurance to include as an additional insured on this policy but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused in whole or in part by you or those acting on your behalf:
> a. In the performance of your ongoing operations;
> b. In connection with premises owned by or rented to you; or
> c. In connection with "your work" and included within the "product-completed operations hazard[.]"

PANY/NJ claimed that this provision "provides additional insured status to any person or organization with whom the named insured agrees to provide additional insured coverage to in a written contract." Id. at 3.  Based on this language, PANY/NJ claimed that because Techno (the name insured) was required by contract to name it as an additional insured under the RLI policy it is an additional insured.

The Appellate Division rejected this argument and found that the language in the endorsement is clear that "to trigger coverage for plaintiff as an additional insured under the RLI policy, there must be liability for Fiume's injuries "caused in whole or in part by [Techno] or those acting on [Techno's] behalf.""  The court added that because the plaintiff's claims in the underlying action ended in settlement, there was "no proof in the record that Fiume's claimed injury was caused in whole or in part by Techno.  Absent such a finding, [plaintiff] cannot be deemed to be an additional insured." Id. [3]

Although the Schafer, Kostera and RLI analyses are all slightly different, it is clear that the finding of negligence on the part of the named insured, and a finding that the additional insured is

---

[3] Although the Court ultimately found there was no coverage for PANY/NJ under the "Professional Services Exclusion", the court affirmed the trial court's decision that "For any claims not barred under the Professional Services Exclusion, plaintiff needed to show that, pursuant to the Blanket Additional Insured Endorsement, that liability for Fiume's injuries was 'caused in whole or in part by' Techno in the performance of their operations". Id.

vicariously liable for that negligence, are both prerequisites that must be met for a non-party to the policy, such as United, to be considered an additional insured under the LMFIC Policy.

In this case, Conti is not a party defendant to the Underlying Actions. There were no claims by either of the Plaintiffs that Conti was negligent, or that its negligence was the cause of the Plaintiffs' injuries. Furthermore, there were no allegations in either Complaint that United was vicariously liable for Conti's use of the Boom equipment, which is a requirement of the language of the Additional Insured Endorsement and the above-cited case law (Kull Cert., Exs.7 and 8).

Moreover, the facts developed in the Underlying Actions demonstrated that the accident happened when a cable snapped and caused the boom lift to suddenly retract and drop. It also was demonstrated that United, not Conti, was responsible for the maintenance of the boom lift and of the cable that broke.

Therefore, there was ample evidence in the policy language, the facts, and the caselaw, to enable LMFIC to conclude that United did not qualify as an additional insured under the Policy, making LMFIC's position at the very least "fairly debatable". As such, LMFIC acted in good faith in denying coverage to United for the claims in the Underlying Actions.

LMFIC acknowledges that this Court ultimately ruled that United is an additional insured under the LMFIC Policy, and was not persuaded by the aforementioned cases. Nevertheless, the Court's disagreement with LMFIC's position does not equate to bad faith on the part of LMFIC.

Under New Jersey law, when there is no Supreme Court or reported Appellate Division case law that directly addresses the coverage issue at hand, parties may properly rely on unpublished decisions to create a "fairly debatable" position on coverage to defeat a claim of bad faith. Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544 (2015). In Badiali, the issue being decided was whether the existence of an unpublished decision serves as a reasonable basis to support the position taken by the insurer who was being accused of acting in bad faith. The court found the insurers' position to be fairly debatable based on the policy language and the insurers' reliance on

14

unpublished decisions.  Id.  The court in Badiali stated, "the mere existence of unpublished case law supporting NJM's rejection of the arbitration award precluded a finding of bad faith against NJM, regardless of whether NJM relied on or was aware of that unpublished case."  Id. at 550.

Similarly, in this case, there is unpublished New Jersey case law that supports LMFIC's position that, under the language of the Additional Insured Endorsement, United does not qualify as an additional insured under the Policy.  Just like in Badiali, the facts, policy language, and caselaw support the position that LMFIC took as to United's additional insured tender.

The standard that must be met to demonstrate an insurer acted in bad faith is formidable. And this standard requires that there be (1) the absence of a reasonable basis for denying coverage, and (2) a reckless disregard of the lack of a reasonable basis for the denial.  LMFIC's denial of United's tender was based upon its investigation, set forth clearly in a position letter to United that relied on the policy language and allegations of the Underlying Actions.  The rejection of the additional insured tender was reiterated to United on multiple occasions.  And, that rejection is supported by multiple New Jersey Appellate Division cases, and is not contradicted by any case directly on point, because there is no case that interprets the exact language at issue.

On this record, a case for bad faith is simply unsustainable, as United cannot show the lack of a reasonable basis for the disclaimer as to its request for additional insured status, and even if it could, there is not a shred of evidence demonstrating that LMFIC knew it did not have a reasonable basis to deny coverage but recklessly disregarded this knowledge and denied coverage anyway.

Therefore, this Court should find that LMFIC did not act in bad faith in denying additional insured coverage to United.   This Court should enter summary judgment in favor of LMIC on United's claim for bad faith.

### 2.	LMFIC's Conduct Did Not Cause The Plaintiff To Suffer Injury, Damage, Loss Or Harm.

United has failed to produce any evidence in this case that it suffered any actual injury, damage, loss or harm as a result of LMFIC's alleged "bad faith" conduct.  The sole evidence

provided to date is the testimony of United's corporate representative, who was designated as the

United person with knowledge of United's alleged "bad faith" damages.

At his 30(b)(6) deposition, United's corporate representative, Barry Davis, testified as

follows regarding the alleged damages suffered by United resulting from LMFIC's purported "bad

faith":

```
3     Q   And then no. 16.  What are United Rentals
4   damages that it claims result from the alleged bad
5   faith of Liberty Mutual?

6     A   The list could be longer than I know, but we
7   have attorneys' fees from one firm that started this
8   case.  We have a second firm carrying on the case
9   against you.  We have what -- what's been paid out.  I
10  don't know if they're -- if they get to my time, but
11  no one likes to donate their time.
12        We have the equipment.  Loss of use.  The
13  machine is still disassembled here in the Bridgeport
14  location, where I happen to be today.  And it doesn't
15  even have -- doesn't even have any salvage value
16  anymore.  It's toast.

17    Q   Let's start -- so the attorneys' fees you're
18  talking about are for the counsel that represented
19  United Rentals in the O'Keefe and in the two lawsuits.
20  Right?
21    A   Correct.

22    Q   And you're talking about Stacy's firm's
23  fees.
24    A   Correct.

25    Q   Okay.  Then you said the amounts that were
1   paid out.  What do you mean there?  And don't tell me
2   the amount if you know it.
3     A   I don't know the amount.  Wasn't privy to
4   it.  But I understand that United Rentals did make
5   some payments to the plaintiffs.
```

(Kull Cert., Ex. 19, pages 46:1-25, 47:1-5)

This testimony of United's representative fails to establish that United has suffered any

damages as a result of LMIC's alleged "bad faith".

As to Mr. Davis' claim that United incurred attorneys' fees as a result of the alleged "bad faith" of LMFIC, all such costs incurred in connection with defending the Underlying Actions and in prosecuting this action were made part of this Court's prior order of October 14, 2022, which awarded all of those fees and costs to United.  (Docket Entries 139 and 140)  As such, United has already been awarded these damages, and cannot collect them *again* based on its "bad faith" claim.

As to Mr. Davis' claim that United incurred costs relating to the damaged boom lift, no such claim ever was made or presented by any party in the Underlying Actions, and neither Mr. Davis nor any representative of United can point to any basis as to how such damages, if they even exist, could possibly be related to any allegation of bad faith for LMFIC's denial of coverage to United for the claims in the Underlying Actions.  Moreover, any such purported "damages" have not been claimed in this case.  There is simply no basis in fact or law to award damages based on the condition of the boom lift.

Finally, as to Mr. Davis' claim that United Rentals incurred bad faith damages as a result of payments made by United to Plaintiffs to settle the Underlying Actions, that argument is without any merit.  First, the limits of the LMFIC Policy are exhausted; therefore, the LMFIC Policy does not have any money available to reimburse United for any amounts it paid to the plaintiffs in the Underlying Actions.  Second, United has available excess liability insurance coverage that sits excess to the LMFIC Policy and that is available to reimburse United for the amounts paid by United to resolve the Underlying Actions.  Since such limits are available to United, no such damages can be attributable to LMFIC.

## <u>CONCLUSION</u>

Based on the foregoing, LMFIC respectfully requests that this Court grant LMFIC's motion for summary judgment dismissing with prejudice those portions of Counts I and II of the amended complaint seeking a duty to indemnify and Count III alleging bad faith.

**KENNEDYS CMK LLP**

By:      <u> /s/Gary S. Kull           </u>
            Gary S. Kull, Esq.
            Gary Sarno, Esq.
            120 Mountain View Boulevard
            P.O. Box 650
            Basking Ridge, New Jersey 07920
            Tel.  (908) 848-6300
            Fax: (908) 647-8390
            Email: Gary.Kull@Kennedyslaw.com
                  Gary.Sarno@Kennedyslaw.com
            ***Attorneys for Defendant***
            ***Liberty Mutual Fire Insurance Company***

Dated:  June 21, 2024